742 A.2d 661

COMMONWEALTH of Pennsylvania, Appellee,

v.

Randolph W. WRIGHT, Appellant.

Supreme Court of Pennsylvania.

Argued March 9, 1999.

Decided Dec. 23, 1999.

Reconsideration Denied Feb. 25, 2000.

Sidney Sokolsky, Norma Chase, Ecker, Ecker & Ecker, Pittsburgh, David Crowley, Centre County Public Defender's Office, for Randolph W. Wright.

Gregory Defloria, Asst. Dist. Atty., for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

SAYLOR, Justice.

This case presents the issue of whether Section 2711(b) of the Crimes Code, which requires the seizure of weapons in certain cases involving domestic violence, authorized the warrantless search of Appellant's home.

On September 21, 1995, at approximately 11:00 p.m., Appellant, Randolph W. Wright, Sr. ("Wright"), returned to the mobile home he shared with his wife and their nine-year-old son. After entering his son's room, where he found his wife and son asleep in bed, Wright produced a nine-millimeter handgun, fired a shot over the bed, and forcibly removed his wife to the living room. There, Wright argued with his wife, placed the gun against his chin, and told her to pull the trigger. Wright then shot his wife in the head, causing a

"glazing injury" to her parietal scalp and fracturing her skull. Upon seeing the injury to his mother, Wright's son telephoned the local emergency response number and reported the shooting.

At 11:55 p.m., two troopers from the Pennsylvania State Police received a radio dispatch for a shooting at the Wright residence. When the troopers arrived, they observed a spent nine-millimeter casing near a screen door on the side of the mobile home. The troopers announced themselves several times, were ultimately advised to "come in," and in response, ordered Wright out of the residence, placed him on the ground, and handcuffed him. Medical personnel were summoned, Wright's son was removed to a neighbor's house, and the scene was secured.

At approximately 1:04 a.m., on September 22, Wright was advised of his constitutional rights and questioned regarding the nature and location of the weapon used in the shooting. Wright responded that he had used a nine-millimeter Makarov, which was inside the mobile home. The police maintained the security of the scene until a third trooper arrived at 1:40 a.m. At that time, having obtained neither a search warrant nor the consent of Wright or his wife, troopers searched the residence. During the search, they discovered the Makarov and a .380–caliber pistol beneath the mattress of the bed in the master bedroom. The nine-millimeter handgun was loaded, with the hammer in a cocked position. Wright was charged with criminal attempt-homicide, 18 Pa.C.S. § 901; aggravated assault (two counts), 18 Pa.C.S. § 2702; and reckless endangerment (two counts), 18 Pa.C.S. § 2705.

Prior to trial, Wright filed a motion to suppress the firearms seized from his residence, claiming that the police should have obtained a search warrant. The suppression court denied the motion, finding that Section 2711(b) of the Crimes Code, 18 Pa.C.S. § 2711(b), requires the seizure of all weapons used by the defendant in the commission of the offense. Wright proceeded to a jury trial, arguing that he had not fired his gun into the wall over his son's bed, and that the injury to his wife was accidental, having occurred during the course of a strug-

gle.[1] Wright was convicted of all charges, except the offense of aggravated assault related to his son, and was subsequently sentenced to an aggregate prison term of five-and-one-half to eleven years and eleven months.

On appeal, a divided panel of the Superior Court affirmed in a memorandum decision. In the lead opinion, Judge Joyce reasoned that the search was justified pursuant to Section 2711(b), which requires the police to seize any weapons used in the commission of certain enumerated offenses involving domestic violence, and that the power to seize such weapons necessarily confers the right to search. Judge Joyce also concluded that the search was proper, because of exigent circumstances that required the troopers to remove the weapons from the residence to ensure the safety of the individuals who resided there. In a concurring opinion, Judge Olszewski maintained that a construction of Section 2711(b) that permits warrantless searches in domestic cases involving a weapon violates the Fourth Amendment's protection against unreasonable searches and seizures. Nevertheless, Judge Olszewski agreed that the return of Wright's son to the residence in the future constituted an exigent circumstance justifying the warrantless search. Judge Kelly also concurred, stating his view that the warrantless search was permissible as incident to a lawful arrest. This Court allowed appeal to consider the propriety of the search and seizure.

■ Section 2711 provides, in relevant part, as follows:

(a) **General rule.**—A police officer shall have the same right of arrest without a warrant as in a felony whenever he has probable cause to believe the defendant has violated section 2504 (relating to involuntary manslaughter), 2701 (relating to simple assault), 2702(a)(3), (4) and (5) (relating to aggravated assault) or 2705 (relating to recklessly endangering another person) against his spouse or other person with whom he resides or has formerly resided although the offense did not take place in the presence of the police

---

**1.** Wright's wife and son testified to this effect on behalf of the defense at trial.

officer. A police officer may not arrest a person pursuant to this section without first observing recent physical injury to the victim or other corroborative evidence.

**(b) Seizure of weapons.**—The arresting police officer shall seize all weapons used by the defendant in the commission of the alleged events.

18 Pa.C.S. § 2711(a), (b). By requiring the police to seize weapons in certain cases involving domestic violence, Section 2711(b) makes mandatory what was previously permissive. In so doing, the statute serves to afford protection to victims of domestic violence by lessening the opportunity for future harm.

■ Nevertheless, an unavoidable tension exists between the government's interest in protecting victims of abuse and the reasonable expectation of privacy associated with one's place of dwelling, which derives from the Fourth Amendment to the United States Constitution.[2] *See generally Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948)(stating that "[t]he right of officers to thrust themselves into a home is . . . a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance"); *see also Dorman v. United States*, 435 F.2d 385, 389 (C.A.D.C.1970) ("[f]reedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment"), *cited with approval in Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). In furtherance of such privacy interests, searches conducted without prior approval by a judicial officer "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *see*

2. The Fourth Amendment states that:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const. amend. IV.

*also Commonwealth v. Williams,* 547 Pa. 577, 584–85, 692 A.2d 1031, 1034–35 (1997).

A plain reading of subsection (b) suggests only that an arresting officer is obligated to confiscate the weapons used in a domestic abuse situation; the terms of the statute do not purport to address the means that may be used in order to discover or locate such weapons. Moreover, to construe Section 2711(b) as authorizing warrantless searches whenever a weapon is implicated in a domestic violence case would, as noted by Judge Olszewski, create a new and categorical exception to the Fourth Amendment's warrant requirement. Because we are obliged to construe the enactments of the General Assembly in harmony with constitutional requirements, *see* 1 Pa.C.S. § 1922(3); *Commonwealth v. McCoy,* 405 Pa. 23, 30, 172 A.2d 795, 798 (1961), the more tenable reading of Section 2711 is that the provision requires the police to seize a weapon when the intrusion is otherwise permissible. We hold, therefore, that the seizure of a weapon pursuant to Section 2711(b) is subject to the limits of existing Fourth Amendment jurisprudence.

Apart from Section 2711(b), the Commonwealth contends that the search was justified pursuant to the exigent circumstances exception to the warrant requirement. *See generally Mincey v. Arizona,* 437 U.S. 385, 392–93, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978). Alternatively, the search would be justified if conducted incident to Wright's lawful arrest. *See Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969).

It is widely recognized that situations involving the potential for imminent physical harm in the domestic context implicate exigencies that may justify limited police intrusion into a dwelling in order to remove an item of potential danger. Indeed, some courts have gone so far as to suggest that a report of domestic violence is sufficient, in and of itself, to warrant such an entry. *See, e.g., State v. Greene,* 162 Ariz. 431, 784 P.2d 257, 259 (1989); *Commonwealth v. Rexach,* 20 Mass.App.Ct. 919, 478 N.E.2d 744, 746 (1985)(recognizing the

volatility inherent in domestic disturbances and thus permitting responding police to "use all reasonable means to prevent further abuse"). Other courts have remained more circumspect. *See, e.g., State v. Gilbert,* 24 Kan.App.2d 159, 942 P.2d 660, 664–66 (1997)(holding that objective manifestations of domestic violence can constitute exigent circumstances justifying the warrantless search of a residence by police, provided that the search is in direct relation to ensuring the welfare and protection of individuals who may be injured); *State v. Younger,* 305 N.J.Super. 250, 702 A.2d 477, 481 (1997)(noting that "the permissible scope in each case will be dependent on the circumstances, including the extent and nature of the officer's probable cause to believe that there is a dangerous weapon on the premises and the degree of exigency of the situation"); *State v. Raines,* 55 Wash.App. 459, 778 P.2d 538, 542 (1989)(emphasizing the need to allow officers flexibility at the scene of a domestic disturbance). *See generally Welsh v. Wisconsin,* 466 U.S. 740, 753, 104 S.Ct. 2091, 2099, 80 L.Ed.2d 732 (1984)(noting that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense" suspected by the police).

██ This is not, however, a case in which the delay occasioned by obtaining a warrant would have subjected a victim of domestic abuse to further risk of physical harm—at the time the search was conducted, the potential for imminent violence had been eliminated. Wright was in police custody, his wife was receiving treatment at a hospital, his son was being taken in by his grandparents, and the police had secured the premises. The mere possibility that Wright's family would have returned to the house at some point in the future did not give rise to an exigency that rendered it impracticable for the police to obtain a warrant.[3] Moreover, there was no indication that the safety of others was threatened, evidence

3. In his dissenting opinion, Mr. Justice Castille posits that the continued police presence at the crime scene is of no relevance, since, in his view, the officers lacked the authority to restrain the Wrights' son from reentry. We need not address this stated concern in the present case, however, because there is no evidence of imminent reentry by the boy to support the finding of an exigency.

might be lost or destroyed, or police lacked the ability to maintain security at the premises pending the issuance of a search warrant.

While the ultimate removal of the weapons was reasonable and prudent, and in fact mandated by Section 2711, it is clear that the authorities had ample time to obtain a warrant or, as a practical matter, the consent of Mrs. Wright. Accordingly, the exigent circumstances exception to the warrant requirement of the Fourth Amendment is inapplicable. *See Mincey*, 437 U.S. at 393, 98 S.Ct. at 2413 (stating that "a warrantless search must be strictly circumscribed by the exigencies that justify its initiation").

Nor can the intrusion be justified as incident to Wright's arrest. A warrantless search incident to an arrest is valid "only if it is substantially contemporaneous with the arrest and confined to the immediate vicinity of the arrest." *Shipley v. California*, 395 U.S. 818, 819, 89 S.Ct. 2053, 2054, 23 L.Ed.2d 732 (1969). Here, the search was not substantially contemporaneous with the arrest, as Wright had been in custody for over an hour prior to the search; nor was the search conducted in the immediate vicinity of the arrest, as Wright was arrested outside his residence. *See Vale v. Louisiana*, 399 U.S. 30, 33–34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970)(holding that a search of the defendant's home was not incident to an arrest when the defendant was arrested outside the residence); *see also Commonwealth v. White*, 543 Pa. 45, 57, 669 A.2d 896, 902 (1995).[4]

---

4. In his dissenting opinion, Mr. Justice Castille maintains that the firearm was never truly at issue at Wright's trial but merely served as a Commonwealth exhibit; thus, any error in its admission into evidence was harmless. The defense theory of the case, however, was that the shooting was accidental, having occurred during a struggle for the gun, and such theory was supported at trial by the victim, who testified for the defense. To rebut this evidence, the Commonwealth felt it necessary to offer the testimony of an expert witness, based upon his examination of the weapon, to the effect that substantial pressure needed to be applied to the trigger in order to fire the weapon, and that it could not have been accidentally discharged. Thus, the firearm was more than an unembellished trial exhibit, and the Commonwealth did not raise the issue of harmless error in its submissions to this Court.

For these reasons, the firearms should have been suppressed as the fruit of an illegal search. Accordingly, the order of the Superior Court is reversed, and the case is remanded for a new trial.

Justice CASTILLE files a concurring and dissenting opinion in which Justice NEWMAN joins.

Justice NIGRO files a concurring and dissenting opinion.

CASTILLE, Justice, concurring and dissenting.

I agree with the Majority that Section 2711(b) of the Crimes Code, 18 Pa.C.S. § 2711(b), must be interpreted in harmony with the Fourth Amendment. However, I believe that the Majority incorrectly concludes that the warrantless search of appellant's home violated the Fourth Amendment. Further, I would find that the admission of the firearms used in the commission of the crime constituted harmless error. Therefore, the judgment of sentence should be affirmed.

This Court has recognized that exigent circumstances will justify a warrantless search where police believe in good faith that a life-threatening emergency exists. *Commonwealth v. Maxwell*, 505 Pa. 152, 163, 477 A.2d 1309, 1315, *cert. denied*, 469 U.S. 971, 105 S.Ct. 370, 83 L.Ed.2d 306 (1984). The definition of exigent circumstances includes "[t]he need to protect or preserve life or avoid serious injury." *United States v. Echegoyen*, 799 F.2d 1271, 1278 (9th Cir.1986), *quoting, Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). One of the factors to be considered in determining whether exigent circumstances exist is danger to persons inside a dwelling. *Commonwealth v. Roland*, 535 Pa. 595, 637 A.2d 269 (1994), *citing Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).

In the case *sub judice*, the presence of loaded firearms in a house to which appellant's nine-year-old son could return at any time created a potentially life-threatening situation that justified the warrantless search. Although appellant's son was

Under these circumstances, we find that harmless error has not been demonstrated beyond a reasonable doubt.

taken to a neighbor's home immediately after his father shot his mother in the head, it was possible that he could return for any number of reasons, including to retrieve personal items or school books or simply to be in his own home.[1] The potential for appellant's son to return to the home and locate the loaded firearms and possibly corrupt the crime scene was an exigent circumstance justifying Trooper Fuller's search for the firearms used in the assault. *See, United States v. Antwine*, 873 F.2d 1144, 1147 (8th Cir.1989)(warrantless search for weapon justified where children would be unattended in house); *United States v. Al–Azzawy*, 784 F.2d 890, 895 (9th Cir.1985), *cert. denied*, 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986)(exigent circumstances justified a warrantless search of a trailer that police believed contained explosives because appellee's children could return to trailer). *Contrast, Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir.1996)(facts did not support finding of exigency that plaintiff might have harmed son where plaintiff was in jail *and the guns in the home had been confiscated* ).

Moreover, I do not believe that the fact that police may have "secured the scene" would have given them the authority to bar the child from his own home, where he was entitled to be, absent a warrant to seal the scene. In *Al–Azzawy, supra*, the United States Court of Appeals for the Ninth Circuit held that police were justified in conducting a warrantless search in order to ensure the safety of the appellee's premises because the police could not arrest all of the individuals who were entitled to enter the trailer, including appellee's two small children. Given that appellant's son was in near proximity and had the right to return to his home at any time, it was necessary for Trooper Fuller to remove a potentially loaded firearm from the home to ensure the child's safety.

Trooper Fuller's actions were clearly intended to protect appellant's son should he return to the home. This conclusion is strengthened by the fact that, in addition to seizing the two

1. Although, as the majority notes, the child was eventually taken in by his grandparents, at the time of the search the child was still across the street at a neighbor's house. N.T. 10/4/95 at 14.

firearms found under a mattress, Trooper Fuller turned over all of the other firearms in the home to a relative. N.T. 10/4/95 at 20. *See, Antwine, supra;* (finding it significant that the search was limited to the scope of the exigency); *Echegoyen, supra* at 1279 (fact that officers turned off the burners, ventilated the premises, and summoned the firefighters to inspect the property buttressed conclusion that they entered the premises because of exigent circumstance—i.e. risk of fire or explosion). Because the police were not authorized to exclude the child from the premises and they had no way of knowing when he might walk across the street and enter his home, it was imperative that Trooper Fuller locate and remove any loaded firearms. Therefore, the warrantless search was justified by exigent circumstances.

Furthermore, even if the search were unconstitutional, the admission of the firearm used in the commission of the crime at trial was harmless error.[2] Under the harmless error doctrine, this Court will affirm the trial court's judgment of sentence in spite of error by the trial court if this Court concludes beyond a reasonable doubt that the error did not contribute to the jury's verdict. *Commonwealth v. Edwards,* 535 Pa. 575, 580, 637 A.2d 259, 261 (1993); *Commonwealth v. Cannon,* 453 Pa. 389, 394, 309 A.2d 384, 388 (1973), *citing Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In this matter, the only evidence that appellant argues should be suppressed as the fruit of the allegedly unconstitutional search is the firearm itself. However, the Commonwealth introduced additional evidence from a number of other sources that established, beyond a reasonable doubt, that appellant shot his wife in the head and was guilty of the crimes charged.

First, the Commonwealth introduced the testimony of Gizella T. Miller, one of appellant's neighbors. Miller testified that

2. Although the Commonwealth has not argued for affirmation on the basis of "harmless error," it is axiomatic that this Court may assign any correct basis for affirmation of the order of the court below. *See Commonwealth v. Romero,* 555 Pa. 4, 722 A.2d 1014, 1016 (1999), *citing Commonwealth v. Shaw,* 494 Pa. 364, 368 n. 1, 431 A.2d 897, 899 n. 1 (1981).

she first heard the gunshots, and then she heard appellant laughing. Shortly thereafter, appellant's mother phoned Miller, requesting that Miller go next door and retrieve appellant's son because "[appellant] just shot Missy [appellant's wife] in the head." When Miller arrived next door, appellant's wife, who had blood all over her body and a gunshot wound to the head, exclaimed: "He did it again. Randy [appellant] shot me, and he put in me [sic] in the shower, Gizzy, and he tried to clean me up." N.T. 1/14/97 at 12.

The Commonwealth also introduced the testimony of Trooper Stephen M. Russo of the Pennsylvania State Police. Trooper Russo testified that, upon arriving at appellant's house, he observed a spent bullet casing by the screen door, then knocked on the door and identified himself to appellant, who responded to the knock. Trooper Russo and his partner detained appellant and proceeded into the home, where they observed the victim bleeding profusely and observed the victim's son, who appeared "shaken up." Trooper Russo testified that, when he spoke with the nine-year-old boy, the child told him that he and his mother had been asleep in the bedroom when appellant came home and initiated an argument with his mother. According to Trooper Russo, the child stated that the argument moved into the living room, at which time the child heard two gun shots. The boy then came out of his bedroom and observed his father on top of his mother, prompting him to return to the bedroom and call the police. N.T. 1/14/97 at 22–24. Trooper Russo also testified that he questioned appellant after giving him his *Miranda* warnings.[3] When Trooper Russo asked appellant which gun he had used in the incident and where the gun was, appellant replied that he had used a 9mm Makarov and that it was in the gun room *with his other guns. Id.* at 25.[4]

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Expert testimony at trial established that the spent bullet casings on the ground outside the house were 9mm Makarov bullet casings. N.T. at 68.

Additionally, the Commonwealth introduced the testimony of Lisa Marie Schumacher, the paramedic who responded to the shooting. She testified that, upon asking the victim what had happened, the victim replied that "her husband had shot her in the head," then had "told her to go into the shower to wash the blood off." *Id.* at 46.

Next, the Commonwealth introduced the testimony of State Trooper Roy G. Fuller, who testified that, during the investigation, he retrieved a copy of the initial call to police from appellant's child. The jury subsequently heard the tape-recorded call, which proceeded, in relevant part, as follows:

911: Westmoreland 911.

CHILD: Oh, my Dad's trying to kill my Mom!

911: Repeat that.

CHILD: Huh?

911: What did your Dad do?

CHILD: He got the gun and he is laying on my Mom.

911: He is laying on your Mom?

CHILD: He's drunk.

. . . .

911: Where do you live at? You said fifth house—

. . . .

CHILD: My dad's coming!

911: Fifth house—don't hang up the phone. Fifth house on the right coming from where?

CHILD: I can't.

(Phone hangs up.)

(911 calls back.)

CHILD: Hello.

911: Hey, this is 911. Don't hang up the phone, whatever you do.

CHILD: My Dad.

911: OK, I know your Dad.

48

(Phone hangs up.)

*Id.* at 57–60.

Trooper Fuller also testified that the victim told him that appellant had put a gun against her head while yelling and screaming at her, aimed the gun at her head and pulled the trigger. She put her head in her hands to cover herself and he fired again, at which point "it felt like her head exploded." Trooper Fuller testified that the victim also stated that appellant gave the victim a towel to try to stop the bleeding and told her not to tell the police that he had shot her. The victim added that she was afraid of appellant and frequently lied to protect him.

Finally, the victim herself testified at trial for the defense, asserting that, although appellant had indeed come at her with a gun, she had subsequently gained control of the gun and accidentally shot herself. The victim further testified that the *second* shot was fired when "[appellant] was trying to come back and get away to leave me, and that is when the gun went off again."

In light of the aforementioned testimony, it is abundantly clear that the admission at trial of the weapon itself constituted harmless error that did not contribute to the verdict. The jury simply believed the version of events that the victim and her son provided to neighbors, paramedics and police immediately after the incident, and disbelieved the rather incredible version that the victim concocted at the eleventh hour in an attempt to save her husband from a criminal conviction. The presence of the firearm used to commit the crime as a Commonwealth exhibit did not render appellant's defense any less believable. Rather, it simply allowed the jurors to see the weapon that lay at the heart of the contradictory stories being proffered by the Commonwealth and the defense. The gun itself was never the issue; only how the gun was used.[5] In

5. The majority asserts that the actual weapon was essential to the Commonwealth's case because, in order to rebut the defense theory, the Commonwealth needed to establish that the gun could not have discharged accidentally. Op. at 665–66. However, appellant himself testified at trial that the gun could not have gone off unless the trigger

sum, I believe that the error in this case was patently harmless, that a new trial would simply waste valuable judicial resources, and that the judgment of sentence should be affirmed.[6]

Justice NEWMAN joins this concurring and dissenting opinion.

NIGRO, Justice, concurring and dissenting.

I fully agree with the majority's analysis regarding the constitutionality of the search at issue in this case. However, I am compelled to dissent as I believe the admission of the gun, obtained during the unconstitutional search of Appellant's home, was harmless error given the overwhelming evidence of Appellant's guilt.

was pulled. N.T. 1/17/97 at 311–2–13. Although appellant argued that he did not intentionally shoot his wife, at no point did the defense present any testimony that the gun had discharged accidentally.

**6.** Moreover, it is arguable that appellant impliedly consented to the search of the premises for the purpose of locating the weapon. Appellant testified that he told the troopers that the gun was in the living room and, when they said it was not there, he told them to "look on top of the fridge." N.T. 1/17/99 at 308. One of the troopers returned to the house and returned with the gun, albeit not from the refrigerator. Thus, although appellant did not expressly consent to a search of the house, he did direct the troopers to attempt to locate the gun where he allegedly believed it to be.