J-S03005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DEMETRIUS CARLOS COLEMAN | : | No. 938 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 5, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0004460-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DEMETRIUS CARLOS COLEMAN | : | |
| | : | |
| Appellant | : | No. 972 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 5, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0004460-2017

BEFORE:   DUBOW, J., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY DUBOW, J.:                **FILED FEBRUARY 09, 2021**

In these consolidated appeals, both the Commonwealth and Demetrius

Carlos Coleman ("Coleman") appeal from Coleman's June 5, 2019 Judgment

of Sentence entered in the Allegheny County Court of Common Pleas following

his jury conviction of three counts of Third-Degree Murder arising from

_____

[*] Retired Senior Judge assigned to the Superior Court.

Coleman's flight from police and a subsequent fatal automobile accident. Coleman challenges certain evidentiary rulings and the discretionary aspects of his sentence. The Commonwealth challenges the trial court's refusal to apply the mandatory sentencing provision found in 42 Pa.C.S. § 9715(a).

The relevant facts and procedural history are as follows. On November 24, 2016, at approximately 2:15 PM, East McKeesport Police Offer Scott Lowden was on patrol on Route 30 when he observed a white Hyundai make an illegal left turn from Santos Street onto Route 30. Officer Lowden followed the Hyundai as it proceeded into a GetGo gas station on Route 30, pulled up to a gas pump, and stopped. Officer Lowden exited his patrol vehicle, approached the driver's window of the Hyundai, and observed Coleman in the driver's seat and Asia Camp, the owner of the vehicle, in the passenger seat.

Officer Lowden then explained to Coleman that Coleman had made an illegal left-hand turn, and requested that Coleman provide him with his driver's license, insurance information, and the vehicle registration. Coleman advised Officer Lowden that his driver's license had been suspended, and, therefore he could not produce it. Ms. Camp was also unable to produce a driver's license.

Officer Lowden returned to his patrol vehicle and confirmed that Coleman had a suspended driver's license. He also learned that there was an active warrant out for Coleman's arrest. Officer Lowden called the North Versailles Police Department for backup.

- 2 -

When two North Versailles police cars arrived as backup, Coleman fled in the vehicle, driving over the curb and sidewalk onto eastbound Route 30. By this time, three additional patrol cars had arrived on the scene. Officer Lowden gave chase and called 911 to notify authorities that Coleman had fled and Officer Lowden was in pursuit.

Coleman headed toward the intersection of Route 30 and Route 48 at speeds approaching 100 miles per hour, weaving in and out of traffic without slowing or stopping. At times, he travelled in the opposite lane of traffic and sped past a stopped police vehicle.

Still in pursuit, as Officer Lowden approached the intersection of Route 30 and Route 48, he saw a large ball of fire and saw that Coleman had crashed his car into a black Mercedes SUV and a white Ford Fusion sedan. The force of the impact with Coleman's vehicle had knocked the Ford into the air, causing it to collide with a utility pole and almost immediately thereafter explode. Kaylie Meininger, David Bianco, and their two-year old daughter were in the Ford. All three were killed instantly.

The Commonwealth charged Coleman with the following offenses arising from this incident: three counts each of Third-Degree Murder and Homicide by Vehicle; two counts of Aggravated Assault; six counts of Accidents Involving Death or Injury While Not Properly Licensed; five counts of

Recklessly Endangering Another Person ("REAP"); and one count each of Fleeing or Attempting to Elude the Police, and Escape.[1, 2]

On September 29, 2017, the Commonwealth filed a pre-trial Motion *in Limine* seeking to introduce evidence that at the time of this incident Coleman was on probation for a prior Possession with Intent to Deliver conviction and that he had numerous prior citations for moving violations.[3] The court held a hearing on the Motion on November 20, 2017. The Commonwealth argued, *inter alia*, that it sought to introduce testimony from Coleman's probation officer, Erin King, that Appellant had ceased checking in with her, which Coleman knew would result in the issuance of a warrant for his arrest. The Commonwealth averred that this evidence was admissible pursuant to Pa.R.E. 404(b) to establish Coleman's motive to flee. The trial court granted the

---

[1] 18 Pa.C.S. § 2502(c); 75 Pa.C.S. § 3732(a); 18 Pa.C.S. § 2702(a)(1); 75 Pa.C.S. § 3742.1(a); 18 Pa.C.S. § 2505; 18 Pa.C.S. § 3733(a); and 18 Pa.C.S. § 5121(a), respectively.

[2] The Commonwealth also charged Coleman at a separate docket number— Docket Number 201902429—with Flight to Avoid Apprehension, Driving Under the Influence, and the summary offenses of Reckless Driving, Driving With a Suspended License, Failure to Obey Traffic Signals, Driving at an Unsafe Speed, and Driving in the Wrong Lane of Traffic. 18 Pa.C.S § 5126(a); and 75 Pa.C.S. §§ 3802(d)(1), 3736(a), 1543(a), 3111(a), 3361, and 3309(1); respectively. Coleman's convictions of those offenses are not at issue in this appeal.

[3] The Commonwealth later amended the Motion to include a request that the court permit it to introduce evidence that, at the time of this incident, Coleman possessed 40 stamp bags of heroin, which the Commonwealth asserted Coleman intended to deliver. The Commonwealth asserted that this evidence was relevant as evidence of an additional motive to flee.

Motion and permitted Probation Officer King to testify that Coleman was aware of the requirement that he check in with her, that he had failed to do so, and that she had issued a warrant for Coleman's arrest.

Coleman sought to exclude several items of evidence, including, relevantly, a photograph of a child's shoe outside a car. The trial court denied Coleman's request.

Coleman's multi-day jury trial commenced on February 25, 2019. The Commonwealth presented testimony from numerous witnesses who established the foregoing facts. The court admitted the photograph of the child's shoe at the scene of the accident over Coleman's renewed objection. Coleman testified on his own behalf.

The jury convicted Coleman of three counts each of Third-Degree Murder, Homicide by Vehicle, and REAP; four counts of Accident Involving Death or Injury While Not Properly Licensed; and one count each of Aggravated Assault, Aggravated Assault by Vehicle, Fleeing or Attempting to Elude the Police, and Escape. The trial court ordered the preparation of a Pre-Sentence Investigation ("PSI") Report.

On March 11, 2019, the Commonwealth filed a Notice of Intent to Proceed Under 42 Pa.C.S. § 9715(a), which provides for mandatory life imprisonment for a second or subsequent conviction of Third-Degree Murder. In particular, the Commonwealth asked the sentencing court to sentence Coleman to a term of 20-40 years' incarceration for his conviction at Count 1 of the Criminal Complaint arising from the death of David Bianco, and then to

apply Section 9715(a) to Coleman's convictions at Counts 2 and 3 of the Criminal Information arising from the deaths of Kaylie Meininger and Annika Meininger.

At Coleman's June 5, 2019 sentencing, Coleman opposed the Commonwealth's request that the court impose a statutory mandatory life sentence. Coleman asserted that application of Section 9715(a) to him would be unconstitutional under **Alleyne v. U.S.**, 133 S.Ct. 2151 (2013), because a prior conviction of Third-Degree Murder is a factual finding that a jury must make beyond a reasonable doubt. He also argued that the Legislature enacted Section 9715(a) to punish recidivism and, because Coleman had not had a chance to rehabilitate, the court should not apply the mandatory provision to him. Ultimately, the court declined to impose a mandatory sentence of life imprisonment. Instead, after considering the parties' arguments, Coleman's statement, victim impact statements, the sentencing guidelines, and the PSI Report, the court imposed an aggregate sentence of 70 to 140 years' incarceration.[4] Coleman did not file a Post-Sentence Motion.

These timely appeals followed. The Commonwealth, Coleman, and the trial court have each complied with Pa.R.A.P. 1925.

---

[4] Specifically, the court imposed three consecutive terms of 20-40 years' incarceration for Coleman's Third-Degree Murder convictions, a consecutive term of 5-10 years' incarceration for his Aggravated Assault conviction, a consecutive term of 2-4 years' incarceration for his Aggravated Assault by Vehicle conviction, a consecutive term of 2-4 years' for his Accident Involving Death or Injury While Not Properly Licensed conviction, and a consecutive term of 1-2 years' for his Fleeing or Attempting to Elude the Police conviction. The court imposed no further penalty for Coleman's other convictions.

Coleman raises the following four issues on appeal:

[1]. Was evidence about [Coleman's] probationary status admissible to show his motive for flight?

[2.] Was the photograph of the child[-] victim's shoe admissible?

[3.] Was the sentence manifestly excessive in light of the lack of intent to kill and the simultaneous deaths?

[4.] Should the mandatory sentencing provision of 42 Pa.C.S. § 9715(a) apply to a case where the offenses and the deaths were simultaneous?[5]

Coleman's Brief at 8.

The Commonwealth raises the following issue on appeal:

Whether the trial court erred and imposed an illegal sentence when it refused to apply the mandatory sentencing provision of 42 Pa.C.S.[] § 9715 when sentencing [Coleman] on multiple counts of [Third-Degree Murder], where all deaths occurred as a result of the same criminal incident?

Commonwealth's Brief at 4.

**Appeal of Coleman**

**Evidentiary Claims**

**Issue I**

In his first issue, Coleman claims that the trial court erred in admitting evidence of Coleman's probationary status. Coleman's Brief at 17-20. He

_____

[5] We observe that in his Question and the Argument presented in support of it, Coleman does not assert that the sentencing court imposed an illegal sentence. In fact, Coleman argues that the trial court correctly refused to impose Section 9715(a)'s mandatory sentencing provision. Accordingly, and because the Commonwealth has challenged the sentencing court's refusal to apply the statute in its cross-appeal, we decline to address this issue in the context of Coleman's appeal.

asserts this evidence was irrelevant because the only question at issue at trial was whether Coleman's crime "rose to the level of third degree murder." *Id.* at 18. Therefore, he claims, "showing motive did not prove anything that was in dispute" because there was no need to know "why [Coleman] 'acted the way he did.'" *Id.* He concludes that the prejudice to Coleman in admitting this evidence "was strong and the necessity was nonexistent." *Id.*

The admission of evidence is within the discretion of the trial court. *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015). "An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* (citation omitted). An abuse of discretion by the trial court, and a showing of resulting prejudice, constitutes reversible error. *Commonwealth v. Glass*, 50 A.3d 720, 724-25 (Pa. Super. 2012).

Generally, all relevant evidence is admissible, and evidence is relevant if it has "any tendency to make a fact more or less probable then it would be without the evidence[.]" Pa.R.E. 401. *See also id.* at 402 (discussing the general admissibility of relevant evidence).

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Id.* at 404(b). It may, however, be admissible to prove the defendant's motive. *Id.* at 404(b)(2). *See also*

- 8 -

*Commonwealth v. Philistin*, 53 A.3d 1, 16 (Pa. 2012) ("Evidence to prove motive is generally admissible."). "[P]roving motive, while not an element of a crime, is intended to demonstrate that the person charged with the crime had reason to commit that crime and was more likely than another individual to commit the offense charged." *Commonwealth v. Mollett*, 5 A.3d 291, 307 (Pa. Super. 2010).

The Commonwealth charged Coleman with, *inter alia*, three counts of Third-Degree Murder. A defendant commits Third-Degree Murder when he acts with malice. *Commonwealth v. Parker*, 168 A.3d 161, 168 (Pa. 2017). For purposes of Third-Degree Murder:

> our courts have consistently held that malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm.

*Id.* (citations and quotation marks omitted).

To demonstrate that Coleman fled from police with the requisite malice to sustain a Third-Degree Murder conviction, the Commonwealth sought to introduce evidence that Coleman was aware that his probation officer had issued a warrant for his arrest and that Coleman's interest in avoiding arrest motivated his flight from police. N.T. Hr'g, 11/20/17, at 26-27. Coleman's counsel argued that this evidence was merely inadmissible evidence of Coleman's bad character. N.T. Hr'g at 30.

The trial court explained its decision to permit the Commonwealth to introduce this evidence as follows:

> The fact that Coleman was on probation was not offered for the purpose of showing that he had criminal tendencies, but, rather to explain his decision to flee from police. There would have been no rational explanation for Coleman's behavior had he not been aware of the fact that there was a warrant out for his arrest. The information that was permitted with respect to Coleman's probationary status was designed to inform the jury as to the reasons why Coleman acted the way he did.

Trial Ct. Op., 6/19/20, at 17.

We agree with Coleman that evidence of his probationary status and his awareness that his probation officer had issued a warrant for his arrest was not relevant to prove the charged offenses. Simply, the Commonwealth did not need to prove **why** Coleman acted the way he did in order to meet its burden of proving that he acted with a "conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm." **Parker**, **supra**. Thus, evidence of Coleman's probationary status did not have "any tendency to make a fact [at issue] more or less probable than it would be without the evidence[,]"[6] and the trial court should not have admitted it.

However, we conclude that this error was harmless.

An error is harmless when: (1) it does not prejudice the defendant or any prejudice was *de minimus*; (2) the erroneously admitted evidence is merely cumulative of other substantially similar evidence; or (3) the "properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error

---

[6] Pa.R.E. 401.

could not have contributed to the verdict." ***Commonwealth v. Green***, 162 A.3d 509, 519 (Pa. Super. 2017) (citation omitted). Thus, even if the trial court admitted evidence in error, we may affirm the judgment of sentence if that error was harmless. ***Commonwealth v. Wright***, 742 A.2d 661, 667 (Pa. 1999) (Castille, J., concurring and dissenting).

Here, the Commonwealth presented overwhelming evidence of Coleman's guilt of Third-Degree Murder, including witness and expert testimony pertaining to Coleman's conduct and the nature of the crash caused by that conduct. The trial court summarized this testimony as follows:

> All of the witnesses who testified as to the manner in which Coleman operated the motor vehicle from the time that he left the GetGo gas station until the time of the collision[] were unanimous in the fact that he was travelling at speeds approaching one hundred miles per hour. The Pennsylvania State Police reconstruction expert, Todd Stevenson, testified that [Coleman's] average speed was seventy-eight miles per hour and was more likely ninety miles per hour during the time that he was operating along Route 30 and that when he was less than one half mile away from the GetGo gas station, he was travelling anywhere between eight-five and eighty-eight miles per hour. Route 30 is a four-lane undivided highway and at times Coleman was travelling partially on the berm in the opposite lane of travel. He had weaved in and out between motor vehicles and then passed Officer Michael Lisovich [], of the Swissvale Police Department, who was travelling westbound on Route 30 on the left side of his car, before veering back across the westbound lanes and into his own eastbound lanes. [Officer Norman] Lock testified that Coleman never slowed down and was approaching one hundred miles per hour as he was going back and forth between lanes as he approached Route 48. When he approached Route 48, he collided with a Mercedes SUV and then struck the Ford sedan[,] which in turn went off the road and struck a Duquesne Light utility pole, thereby exploding into fire, killing all three occupants of that vehicle.

- 11 -

Trial Ct. Op. at 13-14. The overwhelming evidence of record, as summarized above, demonstrated that Coleman acted with "conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm." **Parker**, **supra**. We conclude, therefore, that the properly admitted and uncontradicted evidence of Coleman's guilt "was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict." **Green**, **supra**. Accordingly, Coleman is not entitled to relief on this claim.

**Issue II**

In his second issue, Coleman asserts that the trial court erred in admitting a photograph, which he vaguely identifies as "the only one admitted over the objection of trial counsel." Coleman's Brief at 21. We deduce from Coleman's concession—that "there may have been a smidgen of probative value in that the propulsion of the shoe from the car proved something about the force of the impact"—that Coleman is challenging the admission of a photograph of the child-victim's shoe at the scene of the fatal car accident. *Id.* at 22.

When considering the admissibility of photographs of murder victims over the objection of a defendant, the trial court must engage in a two-part analysis:

> First, the court must determine whether the photograph is inflammatory. This Court has interpreted inflammatory to mean the photo is so gruesome it would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant. Next, if the trial court decides the photo is inflammatory, in order

to permit the jury to view the photo as evidence, it must then determine whether it has essential evidentiary value.

***Commonwealth v. Funk***, 29 A.3d 28, 33 (Pa. Super. 2011) (internal citations omitted).

Our review indicates that the certified record does not contain the photograph to which Coleman objects, and Coleman has not cited to the place in the certified record where this Court could locate the photograph. Our Supreme Court has determined that when an appellant challenges the admissibility of a photograph and the record does not contain the photograph, we cannot assess the appellant's description and his claim. ***Commonwealth v. Powell***, 956 A.2d 406, 423 (Pa. 2008). In finding waiver, the Supreme Court explained:

> An appellate court is "limited to considering only those facts that have been duly certified on appeal." ***Commonwealth v. Williams***, [] 715 A.2d 1101, 1103 ([Pa.] 1998). The Rules of Appellate Procedure place the burden on the appellant to ensure that the record contains what is necessary to effectuate appellate review, and they provide procedures to address gaps or oversights in the compilation and transmission of the record. See generally, Pa.R.A.P. Ch. 19.

***Id.*** Given the foregoing, Coleman has waived his claim regarding the trial court's admission of the photograph at issue.

**Discretionary Aspects of Sentencing**

**Issue III**

In his third issue, Coleman challenges the discretionary aspects of his sentence. Coleman's Brief at 29-33. In particular, Coleman asserts that the trial court's sentence was excessive because Coleman did not intend to kill

- 13 -

anyone and because the victims' deaths occurred on impact and simultaneously as a result of one course of conduct. *Id.* at 29-33.

A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. *Commonwealth v. Hunter*, 768 A.2d 1136, 1144 (Pa. Super. 2001). "Rather, an appellant challenging the discretionary aspects of a sentence must invoke this Court's jurisdiction." *Commonwealth v. Samuel*, 102 A.3d 1001, 1006 (Pa. Super. 2014). To determine whether an appellant has invoked our jurisdiction, we consider the following four factors:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted).

In the instant case, Coleman filed a timely Notice of Appeal. Coleman asserts in his Brief that he preserved this issue by raising it at sentencing. In support of this assertion, he cites to the Notes of Testimony from the sentencing hearing. Coleman's Brief at 29. Our review of the Notes of Testimony indicates, however, that Coleman did not, in fact, preserve the claim he raises in his Brief. It is clear from our review of the Notes of Testimony that the only challenge Coleman raised at sentencing was an objection to the Commonwealth's request that the court apply the mandatory

- 14 -

sentence of life without parole. N.T. Sentencing, 6/5/19, at 2-6, 8. Moreover, Coleman did not file a Post-Sentence Motion for Reconsideration of Sentence. Thus, Appellant has waived this sentencing challenge for purposes of our review.

**Appeal of the Commonwealth**

**Legality of Sentence**

The Commonwealth claims that the sentencing court erred as a matter of law and imposed an illegal sentence when it refused to apply 42 Pa.C.S. § 9715(a) and impose a mandatory sentence of life without parole for two of Coleman's three Third-Degree Murder convictions. Commonwealth's Brief at 13. Coleman responds that the trial court correctly concluded that Section 9715(a) is inapplicable because the deaths caused by him occurred simultaneously and his convictions were "at most minutes apart." Coleman's Brief at 28. He urges this Court to revisit our prior holding in ***Commonwealth v. Morris***, 958 A.2d 569 (Pa. Super. 2008) (*en banc*), which directly supports the Commonwealth's argument. ***Id.*** at 28.

Our standard of review over challenges to the legality of sentence is *de novo* and our scope of review is plenary. ***Commonwealth v. Aikens***, 139 A.3d 244, 245 (Pa. Super. 2014). "An illegal sentence must be vacated." ***Morris***, 958 A.2d at 578 (citation omitted).

Section 9715(a) requires a trial court to impose a sentence of life imprisonment when a defendant, who has been convicted of third degree

murder, had also "**previously been convicted at any time** of murder or voluntary manslaughter[.]"[7] 42 Pa.C.S. § 9715(a) (emphasis added).

In **Morris**, **supra**, this Court affirmed the trial court's application of Section 9715(a) where defendant had been convicted at the same trial of two separate charges of third-degree murder, and sentenced for both convictions at the same sentencing hearing. The trial court, thus, imposed a mandatory sentence of life imprisonment for the second murder conviction. On appeal, the appellant argued that the mandatory life imprisonment provision of Section 9715(a) was "only applicable where a criminal defendant's prior murder conviction and sentence antedates the defendant's carrying out of the second murder." **Morris**, 958 A.2d at 578 (citation omitted). An *en banc* panel of this Court disagreed, concluding that:

> Section 9715 specifically focuses upon whether, at the time of sentencing, a defendant has been previously convicted "at any time." The statute does not state that the two murders must be

---

[7] The relevant part of the statute reads as follows:

> (a) Mandatory life imprisonment.--Notwithstanding the provisions of section 9712 (relating to sentences for offenses committed with firearms), 9713 (relating to sentences for offenses committed on public transportation) or 9714 (relating to sentences for second and subsequent offenses), any person convicted of murder of the third degree in this Commonwealth who has previously been convicted at any time of murder or voluntary manslaughter in this Commonwealth or of the same or substantially equivalent crime in any other jurisdiction shall be sentenced to life imprisonment, notwithstanding any other provision of this title or other statute to the contrary.

42 Pa.C.S. § 9715(a).

tried and sentenced separately. Indeed, the plain language of the statute requires that the trial court determine whether a previous conviction exists at the time of sentencing, without giving consideration to when the conviction occurred. Further, the statute does not make any distinction between convictions that arise from a single criminal episode and multiple criminal episodes. We are bound by the unambiguous language of this statute and we cannot insert additional requirements that the legislature has not included.

*Id.* at 581.

*Morris* is dispositive of the instant case. Coleman's conviction of Third-Degree Murder at Count 1 of the Criminal Complaint constituted a prior conviction for purposes of applying Section 9715(a) when sentencing him for his convictions of Third-Degree Murder at Counts 2 and 3 of the Criminal Complaint. Thus, notwithstanding the trial court's conclusion that the Commonwealth's argument was "illogical" and "ludicrous," the holding from *Morris* is controlling and the trial court erred as a matter of law in refusing to apply Section 9715(a).

Accordingly, we affirm Coleman's convictions, but vacate the Judgment of Sentence, and remand for resentencing in conformance with Section 9715.

Judgment of Sentence vacated. Case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Judge Murray joins the memorandum.

Judge Strassburger joins the memorandum and files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/9/2021