J-A07027-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
BILLY DUNBAR :
:
Appellant : No. 413 EDA 2022

Appeal from the Judgment of Sentence Entered September 1, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006369-2018

BEFORE: DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED JULY 06, 2023**

Billy Dunbar appeals from the judgment of sentence entered following his convictions for persons not to possess a firearm, carrying a firearm without a license, and carrying a firearm in public in Philadelphia.[1] Dunbar challenges the trial court's denial of his motion to suppress. We affirm.

We glean the following facts from the hearing on the motion to suppress. On June 26, 2018, around 9:00 p.m., Sergeant Matthew Notiff of the Philadelphia Police Department was on assigned patrol on Frankford Avenue, in Philadelphia, along with Officers Manes and Halloway. N.T., 6/17/21, at 6. Sergeant Notiff testified that Frankford Avenue is a high-crime area and his team specialized in shootings, robberies, and aggravated assaults. *Id.* He stated that he received a flash report over the police radio that there was a

_____

[1] 18 Pa.C.S.A. §§ 6105, 6106, and 6108, respectively.

shooting at 5140 Leaper Street and that "a known doer, Billy Dunbar, [was] wanted for an [aggravated] assault with a handgun." *Id.* at 6, 12. Sergeant Notiff testified that the officers' flash report was a "really detailed, good verified flash" and identified Dunbar by name. *Id.* at 6, 16. It also stated that he was a black male wearing a white button-up shirt, carrying a duffle bag over his shoulder with a handgun inside, and was last seen in the area of Brian's Sports Bar on Frankford Avenue, which is three blocks away from 5140 Leaper Street. *Id.* at 6-7, 10-11, 16. Sergeant Notiff further testified that his team had "a picture of Mr. Dunbar, a physical description, and his face that was pulled up on the mobile data terminal, so we knew what his facial features looked like." *Id.* at 8.

Sergeant Notiff and Officers Manes and Halloway went to Brian's Sports Bar and observed Dunbar seated at the bar. *Id.* at 7. There were at least five other patrons at the bar. *Id.* at 12-13. Sergeant Notiff asked Dunbar his name at least twice, but he did not respond. *Id.* at 7, 18. Dunbar finally said his name was "William." *Id.* Sergeant Notiff stated that Dunbar matched the exact description of the person on the flash report that was sent out over the police radio. *Id.* at 7, 14. He observed that Dunbar was carrying a duffle bag "around his chest, draped over his shoulder." *Id.* at 7-8. Sergeant Notiff testified that the duffle bag was in the front region of Dunbar's body near his chest and was "[i]n his immediate area of control." *Id.* at 15. The officers then detained Dunbar and "took the duffle bag for safety[.]" *Id.* at 8. Sergeant Notiff stated that after he took the duffle bag, he immediately felt something weighing it

down, and based on his experience as a police officer, he could tell a firearm was inside the bag. *Id.* at 8, 15-16, 19. He said that the heaviness felt like when he would transport his own handgun in a duffle bag. *Id.* at 8, 16-17. Sergeant Notiff testified that based off the verified information in the flash report that Dunbar was carrying a handgun in a duffle bag, he secured the weapon. *Id.* at 17. Sergeant Notiff opened the bag and recovered a loaded semi-automatic handgun with an extended magazine in it, as well as an additional magazine. *Id.* at 9-10.

The trial court denied Dunbar's motion to suppress. Dunbar proceeded to a bench trial, and the court found him guilty of the above-referenced offenses. The court sentenced him to five to ten years of incarceration and a consecutive seven-year term of probation. This appeal followed.

Dunbar raises the following issue:

> Did not the trial court err in denying the motion to suppress evidence where an officer, without a warrant or exigent circumstances, seized a backpack from [Dunbar's] person, opened and viewed the contents of that backpack, and then further searched the backpack, retrieving from that backpack a handgun and gun clips?

Dunbar's Br. at 3.

Dunbar argues the court erred in denying his motion to suppress because the warrantless search of his duffle bag was illegal. *Id.* at 14. He contends that at the time of the search of the bag, he was under the custody and control of the police officers and the bag was beyond his immediate reach. *Id.* at 21. Dunbar argues he had complied with the officers' directives, offered

- 3 -

no resistance, and made no moves towards the bag when Sergeant Notiff stepped away and looked inside of it. *Id.* at 13, 22. He maintains he had no opportunity to access the bag once it was removed from his shoulder. *Id.* at 22. According to Dunbar, "even if the police possessed probable cause to arrest [him] for firearms violations and assault, and even if the police had probable cause to believe that the bag contained a firearm, no exigent circumstances existed to justify the immediate search of the bag without first obtaining a warrant." *Id.* at 13.

We review a trial court's denial of a suppression motion to determine "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Mackey*, 177 A.3d 221, 226 (Pa.Super. 2017) (quoting *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)). "Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous." *Id.* (quoting *Jones*, 988 A.2d at 654). Our scope of review includes only the suppression hearing record. *Id.* We view the record in the light most favorable to the Commonwealth as the prevailing party. *See Commonwealth v. Mathis*, 173 A.3d 699, 706 (Pa. 2017).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect against unreasonable searches and seizures. "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an

established exception applies." ***Commonwealth v. Romero***, 183 A.3d 364, 396 (Pa. 2018) (citation omitted).

One such exception is the search incident to an arrest. ***Commonwealth v. Simonson***, 148 A.3d 792, 797 (Pa.Super. 2016). "The search incident to arrest exception allows arresting officers, in order to prevent the arrestee from obtaining a weapon or destroying evidence, to search both the person arrested and the area within his immediate control." ***Id.*** at 799 (citation and brackets omitted). The scope of such a search includes containers and clothing that are in the arrestee's possession at the time of his arrest. ***See Commonwealth v. Guzman***, 612 A.2d 524, 526-27 (Pa.Super. 1992), *abrogated on other grounds*, ***Commonwealth v. Bell***, 645 A.2d 211 (Pa. 1994) (finding that satchel carried by arrestee at time of arrest was lawfully searched incident to the arrest); ***Commonwealth v. Trenge***, 451 A.2d 701, 710 (Pa.Super. 1982) (holding police lawfully searched shoulder bag that was on arrestee when he was arrested). Additionally, a warrantless search incident to an arrest must be "substantially contemporaneous with the arrest and [is] confined to the immediate vicinity of the arrest." ***Commonwealth v. Wright***, 742 A.2d 661, 665 (Pa. 1999) (quoting ***Shipley v. California***, 395 U.S. 818, 819 (1969)).

Here, Dunbar does not argue that the police lacked probable cause to arrest him. Rather, he contends that the search of his bag was unlawful because he could not exercise control over the bag once it was removed from him. As previously noted, a search incident to an arrest includes the search of the person and the immediate area in which he was detained, as well as

clothing and containers in his possession at the time of arrest. The record indicates that Dunbar was carrying the duffle bag over his shoulder at the time the police had probable cause to arrest him. Further, the search of the bag was made substantially contemporaneously with Dunbar's arrest. **See Wright**, 742 A.2d at 665. Since probable cause existed to arrest Dunbar, and Dunbar's person was searched incident to a legal arrest, the evidence obtained from the search of his bag was properly admitted.[2]

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *7/6/2023*

---

[2] It is irrelevant whether the officers formally announced they were arresting Dunbar before conducting their search. "[A] search conducted immediately prior to an arrest is as valid as a search conducted subsequent and incident to the arrest provided the officer had probable cause to arrest prior to the search as long as the contraband discovered in the search is not used as justification or probable cause for the arrest." **Trenge**, 451 A.2d at 710, n.8.