J-A20025-20

2020 PA Super 280

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                    : PENNSYLVANIA
                                                    :
                    v.                              :
                                                    :
                                                    :
                                                    :
JAMES HAWKINS                                       :
                                                    :
                    Appellant                       : No. 1524 WDA 2019

Appeal from the PCRA Order Entered September 16, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007924-2015

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

OPINION BY OLSON, J.: **FILED DECEMBER 10, 2020**

Appellant, James Hawkins, appeals from the order entered on September 16, 2019, which denied his petition filed under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

In this Court's October 31, 2018 memorandum, we summarized the underlying facts and procedural posture of this case:

> On June 11, 2015, [City of Pittsburgh Police Officer Paul Abel] received a complaint from a female[, named M.H.,] that she was punched in the face by Appellant. [Officer Abel] observed that [M.H.] had a black eye. [M.H.] was the former intimate partner of Appellant. [Officer Abel] responded to [Appellant's residence at 1623 Federal Street, in the City of Pittsburgh,] that evening but nobody appeared to be home at the residence. [1623 Federal Street is a multi-unit apartment building, with one main entry door; Appellant resided in the building's third-floor apartment].
>
> [Officer Abel did not obtain either an arrest warrant for Appellant or a search warrant for Appellant's apartment. Nevertheless, Officer Abel and other officers] responded to [Appellant's] residence the following day. [The] officers knocked on the [front] door [to the apartment complex] and

nobody immediately responded but the officers could hear several people moving around inside the residence. [The] officers observed a trash bag on the sidewalk outside the building. Inside the bag was a Verizon telephone bill addressed to Appellant and what appeared to be plastic baggy "diapers," which were described as the remaining portion of plastic baggies after the corners are cut off to be used to package drugs.

Shortly thereafter, Melissa Dono, Appellant's roommate, opened the door to the residence. Ms. Dono confirmed that Appellant was inside the residence and permitted the officers to enter the residence.

In the entryway of the residence, officers observed an empty stamp bag of heroin on the floor. Appellant was placed under arrest. He was asked to consent to a search of the residence but refused consent. Molly Alexander, who identified herself as Appellant's girlfriend, then advised officers that she was diabetic and needed her medicine. She advised that her medicine was inside her purse, which was located inside a larger bag in Appellant's bedroom. The purse was located in Appellant's bedroom next to the bag Ms. Alexander had described. Sticking out of the purse was another bag with the name, "Crown Royal" on it, and which contained bricks of heroin and baggies of crack cocaine. Marijuana was recovered from inside the purse. Ms. Alexander conceded that the marijuana was hers but she denied knowledge of the other drugs inside the "Crown Royal" bag found in her purse. Both Ms. Alexander and Appellant were arrested

On February 2, 2016, the day of trial, Appellant's counsel attempted to present a motion to suppress evidence. The Commonwealth objected to the late filing, and the trial court denied the motion without a hearing because it was not timely filed. *See* Pa.R.Crim.P. 579 (requiring generally that pre-trial motions shall be filed and served within 30 days after arraignment). After a non-jury trial, Appellant was convicted of one count of possession of heroin, one count of possession of cocaine, and one count of possession with intent to deliver

heroin [("PWID").[1]] On April 21, 2016, the trial court [sentenced Appellant to serve] two and one-half years to five years [in prison,] followed by five years of probation[,] for the [PWID] conviction, and imposed no further penalty for the remaining crimes[.]

***Commonwealth v. Hawkins***, 200 A.3d 620 (Pa. Super. 2018) (unpublished memorandum) at 1-3 (quotations, citations, corrections, and some capitalization omitted).

On January 23, 2017, Appellant filed a timely, *pro se* PCRA petition. The PCRA court appointed counsel to represent Appellant and counsel filed an amended petition on Appellant's behalf. Within the amended petition, Appellant claimed that his trial counsel was ineffective for failing to file a motion to suppress the evidence in his case. Specifically, Appellant claimed, the police officers violated his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution because they entered his home and placed him under arrest without obtaining a warrant that authorized either Appellant's arrest or a search of his residence. ***See*** Appellant's Amended PCRA Petition, 8/14/17, at 3.

On October 24, 2017, the PCRA court notified Appellant that it intended to dismiss his petition in 20 days, without holding a hearing. PCRA Court Order, 10/24/17, at 1; ***see also*** Pa.R.Crim.P. 907(1). The PCRA court finally dismissed Appellant's petition on December 6, 2017. PCRA Court Order,

_____

[1] 35 P.S. § 780-113(a)(16) and (30), respectively.

12/6/17, at 1.  Within the PCRA court's later-filed opinion, the court explained that the police lawfully arrested Appellant without a warrant under 18 Pa.C.S.A. § 2711(a).  This section declares:

> **§ 2711. Probable cause arrests in domestic violence cases**
>
> **(a) General rule.--**A police officer shall have the same right of arrest without a warrant as in a felony whenever he has probable cause to believe the defendant has violated section . . . 2701 (relating to simple assault) . . . against a family or household member although the offense did not take place in the presence of the police officer.  A police officer may not arrest a person pursuant to this section without first observing recent physical injury to the victim or other corroborative evidence.  For the purposes of this subsection, the term "family or household member" has the meaning given that term in 23 Pa.C.S. § 6102 (relating to definitions).

18 Pa.C.S.A. § 2711(a).[2]

Appellant filed a timely notice of appeal and claimed that the PCRA court erred when it dismissed his petition without holding a hearing.  We agreed and held that Appellant was entitled to a hearing on his petition because, first, the record was vague as to whether Officer Abel personally observed the complainant, M.H., with a black eye.  *Commonwealth v. Hawkins*, 200 A.3d 620 (Pa. Super. 2018) (unpublished memorandum) at 6.  Second, we held, "there is an issue of material fact as to whether [Melissa] Dono resided in the apartment, which bears upon her authority to permit entry.  Moreover, there

---

[2] "Former sexual or intimate partners" constitute "family or household members."  23 Pa.C.S.A. § 6102.

- 4 -

is an issue of material fact as to whether [Ms.] Dono ever consented to the officers' entry into the apartment." *Id.* at 8. Thus, since there existed genuine issues of material fact, we held that the PCRA court erred when it dismissed Appellant's petition without holding a hearing and we remanded the case so that the PCRA court could conduct the requisite evidentiary hearing. *See id.* at 8-9.

Following remand, the PCRA court held a hearing on Appellant's petition. During the hearing, Appellant presented the testimony of: himself; his co-defendant, Molly Alexander; City of Pittsburgh Police Officer Paul Abel; and, his trial counsel, Joseph Paletta, Esquire (hereinafter "Attorney Paletta"). Crucially, however, Appellant did not present Melissa Dono as a witness during the hearing.

At the time of the events, Appellant resided in an apartment, on the third floor of a three-floor apartment building. *See* N.T. PCRA Hearing, 6/10/19, at 16. Molly Alexander testified that other residents lived in the apartment building; however, she testified, no one else lived in the third-floor apartment but Appellant. *Id.* at 16-17.

Ms. Alexander testified that, on the day in question, she was visiting Appellant and, "[a]t some point . . . there were police officers banging on the door and some people went down and let them in." *Id.* She testified that Officer Abel and three or more officers entered the apartment; afterwards, she was searched and then moved to another room. *Id.* at 18-19.

Ms. Alexander testified that she is diabetic and thus asked the officers if she could get her insulin. She testified: "[the officers] said they would get it. So I allowed them to go into my purse that was in the other room. . . . They brought my purse to me and said that they found . . . a purple bag inside with drugs in it." *Id.* at 21-22. Ms. Alexander was then arrested.

Officer Paul Abel next testified at the PCRA hearing. As Officer Abel testified, at approximately 5:00 p.m. on June 12, 2015, he and "more than four" other officers arrived at the multi-unit apartment building where Appellant resided, intending to arrest Appellant for assaulting his former intimate partner, M.H. *Id.* at 34-35. Officer Abel testified that Appellant resided on the building's third floor and that all relevant events occurred during the daylight. *Id.* at 35 and 38.

As Officer Abel testified, he "pounded on the [main apartment-complex door] for [approximately] ten minutes" and, during this time, he announced "Police. Open up." "a couple of times." *Id.* at 36. He testified that he did this because "[i]t [was] an apartment building. It was more than one apartment." *Id.* Eventually, Melissa Dono opened the main apartment complex door. Officer Abel testified:

> Melissa Dono opens the door. I asked who she was. She identified herself. We asked her where she lived. She stated up on the third floor. We asked who she lived with. She stated [Appellant]. We asked if . . . he was there right then. She said, "Yes. He is upstairs. I'll go get him." We followed her up the stairs. He was at the door of his own apartment[.]

*Id.* at 38.

Officer Abel also offered a slightly different version of the events. He testified that, when Ms. Dono opened the front door:

> She said, "Come in. He's upstairs." And we followed her upstairs.
>
> . . .
>
> [S]he led us up to the [third-floor apartment] door. She opened [the door]. [Appellant] was standing there. . . . [T]here was a stamp bag [of heroin] laying on the floor right there in plain view, and [Appellant] was taken into custody.

*Id.* at 38, 44, and 45.

Officer Abel testified that Ms. Dono "had a mattress in the front room [of the apartment] and some bags with her stuff in." *Id.* at 41. Officer Abel also testified that Ms. Dono told him that "[s]he lived in the front." *Id.*

Regarding M.H.'s black eye, Officer Abel testified that: he "personally saw [M.H.'s] black eye;" M.H. told him that Appellant "struck her;" and, M.H. told him that Appellant "gave her the black eye . . . [a] day or two before [Officer Abel] talk[ed] to her." *Id.* at 44 and 46-47. Officer Abel also testified that M.H. told him she presently lived with Appellant and she "had sexual relations with [Appellant]." *Id.* at 46-47.

Officer Abel testified that he went to Appellant's residence on the day he first saw M.H., "but nobody was there." Therefore, Officer Abel testified that he went home and, at approximately 5:00 p.m. the next day, he went to Appellant's residence and arrested Appellant for domestic violence. *Id.* at 34-35.

Appellant next testified at the hearing. Appellant testified that he lived in an apartment building, which was located at 1623 Federal Street, in Pittsburgh. He testified: "[i]t was a three-story apartment [building]. At the very bottom was its own apartment. It was abandoned. And on the second floor there was another apartment which a guy named Joe lived in. And then I had my apartment on the very top of the apartment building." *Id.* at 50.

Appellant testified that, on the day in question:

> I was a few feet behind Melissa Dono when she had answered the door. The cops was at the door. They said, 'Is [Appellant] there?' . . . [S]he turned and the cops were right behind her and they came up and arrested me. I was about – I'd say about five feet behind her, you know. I was at the bottom of the steps close to the front door. They arrested me. . . . From the beginning they started looking around for drugs and things like that.

*Id.* at 51.

Appellant testified that the police handcuffed him on the first floor, near the apartment building's main door. *Id.* at 52. He testified that the police then walked him back up to his third-floor apartment and asked him whether they could search his apartment. Appellant testified that he told the police no, but the police began searching his apartment anyway. *Id.* at 52-53.

After hearing the testimony, the PCRA court concluded that: Officer Abel personally observed the complainant, M.H., with a black eye; Melissa Dono lived in the apartment with Appellant; and, Ms. Dono provided the officers with valid consent to enter the apartment. PCRA Court Order, 9/16/19, at 1-2; PCRA Court Opinion, 2/20/20, at 3 and 6.

- 8 -

On September 16, 2019, the PCRA court denied Appellant's petition. Appellant filed a timely notice of appeal and now raises one claim to this Court:

> Whether trial counsel gave ineffective assistance when he failed to file a timely pretrial motion to suppress on behalf of Appellant?

Appellant's Brief at 6.

"Under the applicable standard of review, we must determine whether the ruling of the PCRA court is supported by the record and is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court." *Commonwealth v. Spotz*, 18 A.3d 244, 259 (Pa. 2011) (citations omitted). "However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." *Id.*

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii) (some capitalization omitted).

Counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

- 9 -

(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). As this Court has explained:

A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. ***See Commonwealth v. Jones***, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

***Commonwealth v. Stewart***, 84 A.3d 701, 707 (Pa. Super. 2013) (some quotations and citations omitted).

Appellant claims that his trial counsel was ineffective for failing to file a suppression motion. According to Appellant, his underlying claim has arguable merit – and the evidence against him should have been suppressed – because

the police entered his home and placed him under arrest without obtaining either a search warrant or an arrest warrant. Appellant's Brief at 35. Further, Appellant claims, the warrantless entry into his apartment was not justified by either exigent circumstances or valid consent. *Id.* at 35-53. Finally, Appellant claims, his warrantless arrest was unlawful because the police did not observe a "recent physical injury" on the complainant, M.H., which was necessary to support a warrantless arrest under 18 Pa.C.S.A. § 2711. *Id.* at 52-53. We first consider whether the police were justified in entering Appellant's apartment without a warrant; we then consider whether Appellant's warrantless arrest was lawful.

"Under the Fourth Amendment, searches and seizures without a warrant are presumptively unreasonable, subject only to specifically established exceptions." *Commonwealth v. Wilmer*, 194 A.3d 564, 567-568 (Pa. 2018) (quotations and citations omitted). One exception to the warrant requirement is a consent search.[3] *Id.* at 568. "The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the

---

[3] Within Appellant's brief, Appellant argues at length that exigent circumstances did not justify the warrantless entry into his apartment. *See* Appellant's Brief at 35-50. We agree that exigent circumstances did not justify the warrantless entry into Appellant's home. Nevertheless, this conclusion does not entitle Appellant to relief, as the PCRA court did not base its decision on the existence of exigent circumstances. Instead, the PCRA court held, the warrantless entry was justified based upon Ms. Dono's valid consent. *See* PCRA Court Opinion, 2/20/20, at 4.

citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent." *Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000). "Where the underlying encounter [between the citizen and the police] is found to be lawful, voluntariness becomes the exclusive focus."[4] *Id.* at 888-889.

As to the voluntariness of an individual's consent, we have declared:

> [during the suppression hearing,] the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice – not the result of duress or coercion, express or implied, or a will overborne – under the totality of the circumstances. While knowledge of the right to refuse to consent to the search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. Additionally, although the inquiry is an objective one, the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account.
>
> Since both the tests for voluntariness and for a seizure centrally entail an examination of the objective circumstances surrounding the police/citizen encounter to determine whether there was a show of authority that would impact upon a reasonable citizen-subject's perspective, there is a substantial, necessary overlap in the analyses.
>
> . . . [T]he following factors outlined [in *Strickler*] are pertinent to a determination of whether consent to search is voluntarily given: 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor

---

[4] Appellant does not claim that Ms. Dono was seized prior to giving the officers consent to enter either the apartment building or Appellant's third-floor apartment.

and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) whether the person has been told that he is free to leave; and 9) whether the citizen has been informed that he is not required to consent to the search.

***Commonwealth v. Kemp***, 961 A.2d 1247, 1261 (Pa. Super. 2008) (*en banc*) (quotations, citations, and corrections omitted), *quoting* ***Strickler***, 757 A.2d at 901-902. "With regard to consent, 'voluntariness' is a question of fact to be determined from the totality of the circumstances." ***Commonwealth v. Fredrick***, 230 A.3d 1263, 1267 (Pa. Super. 2020); ***Schneckloth v. Bustamonte***, 412 U.S. 218, 227 (1973) ("the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances").

The PCRA court concluded that Melissa Dono lived in the apartment with Appellant and that Ms. Dono validly consented for the officers to enter the apartment.[5]  PCRA Court Order, 9/16/19, at 1-2; PCRA Court Opinion, 2/20/20, at 6.  On appeal, Appellant claims that the PCRA court erred in

---

[5] During the PCRA hearing, Appellant testified that he was arrested on the first floor of the apartment building and that the police then marched him back up to his third-floor apartment.  **See** N.T. PCRA Hearing, 6/10/19, at 50-53. Further, both Appellant and Molly Alexander testified that Ms. Dono did not live in Appellant's apartment.  **See id.** at 17 and 50-53.  Nevertheless, the PCRA court did not credit Appellant's version of the events and the PCRA court did not believe Appellant's and Ms. Alexander's testimony that Ms. Dono did not live in the apartment.  **See** PCRA Court Opinion, 2/20/20, at 1-7.

concluding that Ms. Dono consented to the officers' entry because the officers "ordered the occupants to open the door" when they declared "Police. Open up." and, relatedly, because the officers used intimidation to gain access to Appellant's residence.[6]  Appellant's Brief at 52.  This claim fails.

The problem with Appellant's claim lies, initially, in the fact that Appellant is seeking post-conviction collateral relief and, thus, Appellant bears

---

[6] On appeal, Appellant does not contest the PCRA court's factual finding that Ms. Dono possessed either common or apparent authority to enter Appellant's apartment.  **See** Appellant's Brief at 35-57.  Nevertheless, we note that a third party who possesses common authority or apparent authority over the area to be searched may validly consent to a search.  "Common authority rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants [or co-possessors] has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."  **Commonwealth v. Gibbons**, 549 A.2d 1296, 1300-1301 (Pa. Super. 1988) (citations and corrections omitted).

Regarding apparent authority, our Supreme Court has held:

> A third party with apparent authority over the area to be searched may provide police with consent to search.  Third party consent is valid when police reasonably believe a third party has authority to consent.  Specifically, the apparent authority exception turns on whether the facts available to police at the moment would lead a person of reasonable caution to believe the consenting third party had authority over the premises.  If the person asserting authority to consent did not have such authority, that mistake is constitutionally excusable if police reasonably believed the consenter had such authority and police acted on facts leading sensibly to their conclusions of probability.

**Commonwealth v. Strader**, 931 A.2d 630, 634 (Pa. 2007) (quotations and citations omitted).

the burden of production and persuasion in this case. **See Rivera**, 10 A.3d at 1279 (holding that trial counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant"). Therefore, during the PCRA hearing, Appellant was required to prove that, if his trial counsel had filed a motion to suppress, the Commonwealth would have been unable to prove that Ms. Dono validly consented to the entry and search. **See Kemp**, 961 A.2d at 1261 ("[during the suppression hearing,] the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice – not the result of duress or coercion, express or implied, or a will overborne – under the totality of the circumstances").

However, Appellant did not present Ms. Dono as a witness during the PCRA hearing and there is no evidence that Ms. Dono even heard the officers declare "Police. Open up." This omission is glaring, since Officer Abel was knocking on the main, first-floor door to the apartment building – and not Appellant's specific, third-floor apartment door – and since Officer Abel specifically testified that, during the ten minutes he was "pounding" on the main door to the apartment building, he announced "Police. Open up." only "a couple of times." Further, and relatedly, since Ms. Dono did not testify at the hearing, there is no evidence as to how long Ms. Dono heard the officers pounding on the apartment building's main door, there is no evidence as to how many officers were in front of the door when Ms. Dono opened it, and there is no direct evidence that the actions of the police produced, in Ms. Dono, a will overborne which deprived her of the capacity to make an

- 15 -

essentially free and unconstrained choice. In the absence of such evidence, we are unable to conclude that Appellant met his burden of establishing that Ms. Dono's consent was anything other than voluntary. Therefore, we hold that Appellant's first claim on appeal fails.

Appellant next claims that his warrantless arrest, under 18 Pa.C.S.A. § 2711(a), was unlawful because the police did not observe a "recent" physical injury on the complainant, M.H.

As noted above, 18 Pa.C.S.A. § 2711 declares:

> **§ 2711. Probable cause arrests in domestic violence cases**
>
> **(a) General rule.--**A police officer shall have the same right of arrest without a warrant as in a felony whenever he has probable cause to believe the defendant has violated section . . . 2701 (relating to simple assault) . . . against a family or household member although the offense did not take place in the presence of the police officer. A police officer may not arrest a person pursuant to this section without first observing recent physical injury to the victim or other corroborative evidence. For the purposes of this subsection, the term "family or household member" has the meaning given that term in 23 Pa.C.S. § 6102 (relating to definitions).

18 Pa.C.S.A. § 2711(a).

Appellant's claim on appeal is limited: he argues only that his warrantless arrest under Section 2711(a) was illegal because the police did not observe a "recent" physical injury on M.H.[7] **See** Appellant's Brief at 42.

_____

[7] Appellant analyzes, at length, the Pennsylvania Supreme Court's opinion in **Commonwealth v. Wright**, 742 A.2d 661 (Pa. 1999). **See** Appellant's Brief at 41-48. The main issue in **Wright**, however, was whether 18 Pa.C.S.A.

According to Appellant, since his arrest occurred "between two [] to three [] days after [M.H.] said . . . she was assaulted[, t]he potential for imminent violence had dissipated" and exigent circumstances did not justify his warrantless arrest. *See id.* at 50-52. This claim fails.

At the outset, Appellant's claim that exigent circumstances did not justify his warrantless arrest immediately fails, as Officer Abel utilized the statutory authority of 18 Pa.C.S.A. § 2711(a) to arrest Appellant without a warrant. *See* 18 Pa.C.S.A. § 2711(a) ("A police officer shall have the same

_____

§ 2711(**b**) permitted a warrantless search of the defendant's home. Section 2711(b) declares:

> **(b) Seizure of weapons.--**The arresting police officer shall seize all weapons used by the defendant in the commission of the alleged offense.

18 Pa.C.S.A. § 2711(b).

The *Wright* Court held that Section 2711(b) merely makes the seizure of weapons from the defendant "mandatory," when such a seizure "was previously permissive." However, the *Wright* Court held that the "the terms of [Section 2711(b)] do not purport to address **the means** that may be used in order to discover or locate such weapons." *Wright*, 742 A.2d at 664 (emphasis added). Regarding "the means" by which a search and seizure must take place, the *Wright* Court held that "the seizure of a weapon pursuant to Section 2711(b) is subject to the limits of existing Fourth Amendment jurisprudence." *Id.*

Put simply, *Wright* is solely concerned with the proper interpretation of Section 2711(b) – and whether that section authorizes an unstated warrantless search and seizure of weapons from a defendant's home. The case at bar, however, concerns a warrantless arrest under Section 2711(a), where Section 2711(a) specifically authorizes a warrantless arrest under certain circumstances. As such, *Wright* is inapposite to the case at bar and the opinion does not provide Appellant with an avenue for relief.

right of arrest without a warrant as in a felony whenever he has probable cause to believe the defendant has violated section . . . 2701 (relating to simple assault) . . . against a family or household member although the offense did not take place in the presence of the police officer"); **see also** ***Florida v. White***, 526 U.S. 559, 565 (1999) ("the Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred"); Pa.R.Crim.P. 502(2)(b) ("Criminal proceedings in court cases shall be instituted by . . . an arrest without a warrant . . . upon probable cause when the offense is a felony or murder"). Therefore, the only question on appeal is whether Officer Abel effected the arrest after observing a "recent" physical injury to M.H.  **See** Appellant's Brief at 50-52.

The legislature did not specifically define the phrase "recent physical injury" in 18 Pa.C.S.A. § 2711(a).  Moreover, the term "recent" is, by general definition, a vague and imprecise word, whose meaning is highly dependent upon the context in which it is being used.  **See** NEW OXFORD AMERICAN DICTIONARY 1421 (2001) (defining the term "recent" as "having happened, begun, or been done not long ago or not long before; belonging to a past period of time, comparatively close to the present").  Nevertheless, we conclude that Section 2711(a)'s statutory requirement of a "recent physical injury" is undoubtedly satisfied in this case.

During the PCRA hearing, Officer Abel testified that the complainant, M.H., told him that Appellant "gave her the black eye . . . [a] day or two before

[Officer Abel] talk[ed] to her." N.T. PCRA Hearing, 6/10/19, at 46-47. Officer Abel testified that, at approximately 5:00 p.m. the next day, he went to Appellant's residence and arrested Appellant for domestic violence. *Id.* at 34-35.

This is not a case where the police observed a scar, with the initial injury having been inflicted years ago. Rather, in this case, Officer Abel observed bruising, which is temporary in nature, from an attack that occurred one or two days prior. Allowing for the one day of delay between the report and the arrest, we conclude that a lapse of two to three days after the injurious event – while the temporary bruising from the injurious event is still observable – unquestionably qualifies as a "recent" physical injury under Section 2711(a). To be sure, Section 2711(a) specifically authorizes the warrantless arrest of perpetrators of domestic violence. By using such a vague term as "recent" in Section 2711(a), the legislature apparently realized that victims of domestic violence might delay reporting abuse "because they [might] believe it is a private matter or for fear that the violence would intensify" and that there might be some delay between the report and the police action. *See S.K.C. v. J.L.C.*, 94 A.3d 402, 415 n.17 (Pa. Super. 2014) ("[m]ore often than not, female domestic violence victims do not report the abuse because they believe it is a private matter or for fear that the violence would intensify"), *quoting*, Christina Samons, *Same–Sex Domestic Violence: The Need for Affirmative Legal Protections at All Levels of Government*, 22 S. CAL. REV. L. & SOC. JUST. 417, 420 (2013) (citation omitted). In such context, a delay of two to three

days from the injurious event undoubtedly qualifies as "recent."  *C.f.* 23 Pa.C.S.A. § 6303 (defining "recent act" under the Child Protective Services Law as:  "[a]ny act committed within two years of the date of the report to the department or county agency").  Appellant's claim on appeal thus fails.

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/10/2020