J-A06034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT DEMERY | : | |
| | : | |
| Appellant | : | No. 36 WDA 2023 |

Appeal from the Judgment of Sentence Entered December 5, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0001859-2022

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

MEMORANDUM BY BECK, J.:                          **FILED: May 6, 2024**

Robert Demery ("Demery") appeals from the judgment of sentence entered by the Allegheny County Court of Common Pleas ("the trial court") after a jury found him guilty of persons not to possess a firearm.[1]  On appeal, Demery challenges the trial court's denial of his suppression motion.  Because we find no error in the trial court's decision, we affirm.

The certified record reflects that on January 8, 2020, Detectives Joshua Stegena ("Detective Stegena") and Brian Nicholas ("Detective Nicholas") of the Allegheny County Police were conducting surveillance at the Harrison Village Housing Complex in McKeesport, Pennsylvania.  N.T., 11/15/2021, at 4, 7.  At around 3:00 p.m., a black Jeep parked in a nearby handicap space.

---

[1]  18 Pa.C.S. § 6105(a)(1).

*Id.* at 4-5. Steven McQueen ("McQueen") exited the passenger side of the Jeep and entered apartment 9G. *Id.* Approximately two minutes later, McQueen exited the apartment. *Id.* McQueen appeared nervous, was looking all around the complex, and was clutching something in front of his body as he returned to the Jeep. *Id.* at 5. The detectives then conducted a traffic stop of the Jeep for illegally parking in a handicap space. *Id.* at 5-6. During the stop, McQueen admitted to the detectives that he had marijuana; the detectives searched the Jeep and found it in the passenger door compartment. *Id.* at 6. McQueen then told the detectives that Demery was inside apartment 9G. *Id.* at 7.

During the stop of the Jeep, Lieutenant Sid Summers ("Lieutenant Summers") of the McKeesport Police Department arrived as backup. *Id.* Lieutenant Summers informed Detective Stegena that Demery had an active felony arrest warrant related to drug and firearm offenses. *Id.* at 7-8. The police officers did not observe anyone else leave apartment 9G, so they proceeded to knock on the door of the apartment and asked Demery to come to the door. *Id.* at 7. After knocking on the door, the police officers heard someone running frantically around the apartment. *Id.* Police were concerned that Demery, given the nature of his arrest warrant, was either arming himself or destroying evidence. *Id.* at 8. Consequently, they contacted the McKeesport Housing Authority, who quickly arrived on the scene to provide a key to the apartment. *Id.* Although police were able to unlock

the door, they were only able to open it about an inch because Demery had barricaded it. *Id.* at 8-9. Demery eventually removed the barricade, and police entered the apartment. *Id.*

Once they entered, Detective Nicholas handcuffed Demery and two police officers conducted a protective sweep of the apartment to confirm no one else was present. *Id.* at 9. Police noted that the apartment had an overwhelming odor of marijuana. *Id.* at 10.

Eventually, the leaseholder of the apartment and Demery's paramour, Shardasia Williams ("Williams"), arrived at the scene. *Id.* After officers advised Williams of the situation and her rights regarding a search of the apartment, she consented to a search. *Id.* at 10-11. During the search, police discovered box of .380 caliber handgun ammunition in the kitchen, a stolen Smith & Wesson .40 caliber firearm, 17 ounces of marijuana, and a digital scale with marijuana residue. *Id.* at 11.

Police placed Demery under arrest, and the Commonwealth charged him with receiving stolen property, possession of a controlled substance, possession with the intent to deliver a controlled substance, possession of drug paraphernalia, and persons not to possess a firearm. On March 24, 2021, Demery filed a suppression motion in which he argued that his arrest warrant was insufficient to authorize police to enter Williams' apartment because it was not his residence. Demery asserted that because apartment 9G was the residence of a third party, police needed a warrant authorizing the search of

- 3 -

the premises based on probable cause. Demery contended that, as a result, police illegally entered and searched the apartment without valid authority. Following a hearing on Demery's motion, the trial court denied the motion.

On March 14, 2022, the trial court entered an order severing the persons not to possess a firearm charge from the other offenses. On July 21, 2022, the trial court held a jury trial on the severed firearms charge, at the conclusion of which the jury found him guilty.[2]

On December 5, 2022, the trial court sentenced Demery to four-and-a-half to nine years in prison. This timely appeal followed. Both the trial court and Demery have complied with Pennsylvania Rule of Appellate Procedure 1925. Demery now presents the following issue for review:

> Whether the [trial court] erred in denying [Demery]'s motion to suppress evidence, where the police conducted a warrantless entry and search of a third party's residence where [Demery] was an overnight guest, and the third[-]party leaseholder did not give voluntary consent?

Demery's Brief at 4.

Our standard of review for the denial of a suppression motion is well-settled:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the

---

[2] As of sentencing in this case, Demery's remaining charges were still pending. *See* N.T., 12/5/2022, at 2-3.

Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Carey*, 249 A.3d 1217, 1223 (Pa. Super. 2021).

In support of his sole issue on appeal, Demery argues that the trial court erred in denying his suppression motion because the police engaged in a series of unconstitutional warrantless searches that violated both the United States and Pennsylvania Constitutions. *See* Demery's Brief at 14-26. He raises three distinct arguments in support of this claim—pertaining to the lawfulness of the initial entry into Williams' apartment, the protective sweep, and the search conducted pursuant to Williams' consent—which we address seriatim. *Id.*

## Lawfulness of the Initial Entry into the Apartment

First, Demery argues that the initial illegal search occurred when police unlocked the door to apartment 9G and partially forced the door open. *Id.* at 17-22. Demery contends that his arrest warrant did not authorize police to enter the apartment because it was not his residence, but was the residence of Williams, a third party. *Id.*

"Both the Fourth Amendment [to] the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee individuals['] freedom from unreasonable searches and seizures." ***Commonwealth v. Duke***, 208 A.3d 465, 470 (Pa. Super. 2019) (citation and quotation marks omitted). "A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions." ***Commonwealth v. Smith***, 285 A.3d 328, 332 (Pa. Super. 2022) (quotation marks and citation omitted). "Exceptions to the warrant requirement include the consent exception, the plain view exception, the inventory search exception, the exigent circumstances exception, the automobile exception ..., the stop and frisk exception, and the search incident to arrest exception." ***Commonwealth v. Simonson***, 148 A.3d 792, 797 (Pa. Super. 2016) (quotation marks and citation omitted).

Demery relies on ***Commonwealth v. Romero***, 183 A.3d 364 (Pa. 2018) (Opinion Announcing the Judgment of the Court) ("OAJC"), to support his claim. Demery's Brief at 17-21. In ***Romero***, Earnest Moreno ("Moreno") absconded from a halfway house in Philadelphia, Pennsylvania to which he had been released on state parole and consequently, a warrant was issued for his arrest. ***Romero***, 183 A.3d at 372. United States Marshals attempted to execute the arrest warrant at the home of Moreno's half-brother, Angel Romero ("Romero"). ***Id.*** Although Moreno was not in Romero's home, the

marshals searched the entire residence and discovered a marijuana grow operation in Romero's basement. *Id.* The marshals informed the Philadelphia Police Department who obtained and executed a search warrant on Romero's home. *Id.* Police arrested Romero and his wife, and they were charged with numerous drug offenses. *Id.*

Romero and his wife filed suppression motions, which the trial court granted. *Id.* at 373. In granting the suppression motions, the trial court relied on *Payton v. New York*, 445 U.S. 573, 603 (1980) (stating that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within" ), and *Steagald v. United States*, 451 U.S. 204, 212-22 (1981) (holding that an arrest warrant does not authorize entry into the home of a third party not named in arrest warrant absent consent or exigent circumstances). Based on the evidence presented at the suppression hearing, the trial court in *Romero* determined that "a reasonable belief could not have been formed to suggest Moreno lived in the Romero residence[,]" and therefore, "the authorities['] entry into Romero's … residence was unlawful". *Romero*, 183 A.3d at 374.

On appeal, this Court reversed and remanded for trial, holding that where the police possess a reasonable belief that the subject of an arrest warrant lives at a certain location, they can enter the home without a search warrant for the residence. *Id.* at 375. This Court determined that the

marshals reasonably believed that Romero's home was Moreno's most likely residence, and because they possessed a valid warrant for Moreno's arrest, the marshals had a legal basis to enter Moreno's home. *Id.* At 376.

On appeal to our Supreme Court, the OAJC analyzed "the interaction between *Payton* and *Steagald* in determining the scope of the authority provided by an arrest warrant to enter a private residence." *Id.* at 377. Emphasizing the distinction between cases involving the Fourth Amendment rights of the subject of an arrest warrant and those of a third-party homeowner where the police attempt to execute an arrest warrant, the OAJC explained:

> The Fourth Amendment protects the privacy interests in all homes. To overcome that privacy interest, a warrant used to enter a home must reflect a magisterial determination of probable cause to believe that the legitimate object of a search is contained therein. The form of the warrant is significant only in that it ordinarily signifies "what the warrant authorize[s] the agents to do." *Steagald*, 451 U.S. at 213[.] That is, the central distinction between an "arrest warrant" and a "search warrant" is the identification of the particular person or place that the magistrate has found probable cause to seize or to search. If an arrest warrant is based solely upon probable cause to seize an individual, then it authorizes precisely that seizure. If entry into a residence is necessary to search for that individual, then the warrant must reflect a magisterial determination of probable cause to search that residence, regardless of whether the warrant is styled as an "arrest warrant" or a "search warrant." The critical inquiry is whether the warrant adequately addresses all of the Fourth Amendment interests that are implicated by the contemplated action.

*Id.* at 403-04. Absent a warrant, "an entry into a residence is excused only by a recognized exception to the warrant requirement." *Id.* at 406. Thus,

our Supreme Court remanded the case to the trial court for a determination on whether the contents of the arrest warrant reflected probable cause to search Romero's home. *Id.*

In *Commonwealth v. Mullen*, 267 A.3d 507 (Pa. Super. 2021), this Court analyzed *Romero* in the context of police executing a search warrant where they located the subject of the warrant, Christopher Mullen ("Mullen"), at his paramour's home. *Id.* at 509. The police had received an anonymous tip about Mullen's whereabouts and observed him inside the residence through a window. *Id.* at 509. Mullen argued that under *Romero*, "a magistrate must determine that officers have probable cause to believe the residence in question is the residence of the person sought to be arrested prior to the officers' entry into a home." *Id.* at 511.

In rejecting Mullen's argument, this Court determined that *Romero* was factually distinguishable as it "addressed the rights of third parties who were not the subject of an arrest warrant[,]" and "made clear throughout its disposition that the facts of *Romero* were distinguishable from those scenarios involving an arrestee's rights." *Id.* at 516. Instead, we found our Supreme Court's decision in *Commonwealth v. Stanley*, 446 A.2d 583, 586 (Pa. 1982) (holding that a valid arrest warrant and mere "reason to believe" that the subject of the warrant was within a residence was all that police needed to lawfully enter), controlling. *Mullen*, 267 A.3d at 516. Because Mullen was the subject of an arrest warrant and the police observed him inside

- 9 -

of his paramour's residence, our Court concluded that police possessed the reasonable belief necessary to enter the paramour's home. *Id.* at 516-17.

Here, Demery's reliance on *Romero* is unavailing, and instead we find this case analogous to *Mullen*. In the instant case, like *Mullen*, Demery was the subject of an arrest warrant. N.T., 11/15/2021, at 7-8. Additionally, as in *Mullen*, police had reason to believe that Demery was inside apartment 9G, as McQueen, who had just left that apartment, informed the officers that Demery was inside. *Id.* at 7. Pursuant to *Mullen*, Demery cannot assert Williams' privacy interest in her apartment—the interest of a third party—to his own benefit. *See Mullen*, 267 A.3d at 516. Therefore, we conclude that police possessed the arrest warrant and reasonable belief necessary to lawfully enter the apartment. *See Mullen*, 267 A.3d at 516-17. Accordingly, Demery's argument that the police officers unlawfully entered the apartment because they did not have a search warrant fails.

## Lawfulness of the Protective Sweep

Demery argues that the second illegal search occurred after he unbarricaded the door and police conducted a protective sweep of the apartment. Demery's Brief at 21-22. Demery asserts that he was handcuffed outside the apartment, police had been observing the area and saw no one else enter the apartment, and they therefore had no reason to believe anyone else was in the apartment or fear for their safety. *Id.* 21-22, 26.

"A protective sweep is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Commonwealth v. Taylor*, 771 A.2d 1261, 1267 (Pa. 2001) (quotation marks and citation omitted). There are two levels of protective sweeps. *See id.* "Pursuant to the first level of a protective sweep, without a showing of even reasonable suspicion, police officers may make cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant." *Commonwealth v. Potts*, 73 A.3d 1275, 1281-82 (Pa. Super. 2013). "The scope of the second level permits a search for attackers further away from the place of arrest, provided that the officer who conducted the sweep can articulate specific facts to justify a reasonable fear for the safety of himself and others." *Id.* at 1282. When officers conducting a protective sweep observe or encounter evidence of criminal activity, they are not required to ignore it. *Id.*

The record reveals that when police officers knocked on the door of apartment 9G and asked Demery to come to the door, they heard someone running frantically around the apartment. N.T., 11/15/2021, at 7. They were concerned that Demery was either arming himself or destroying evidence because he had an arrest warrant related to firearm and drug offenses. *Id.* at 8. The record further reflects that although police were able to unlock the door, they were only able to open it about an inch because Demery had barricaded it. *Id.* at 8-9. Demery eventually removed the barricade, and

police entered the apartment, at which point they conducted a protective sweep and encountered an overwhelming odor of marijuana. *Id.* at 8-10. Although police had been observing the apartment for approximately one to two hours, they had not been there all night and could not know for sure that no one else other than Demery was inside. *Id.* at 12-13. Additionally, testimony reflects that there was a backdoor to the unit, and police did not know whether anyone entered the apartment that they could not see. *Id.* at 12.

Based on the record before us, we conclude that the police officers possessed specific facts sufficient to justify a reasonable fear for their safety and the safety of others to support a protective sweep of the apartment. *See Potts*, 73 A.3d at 1281-82. Therefore, Demery's argument that the police conducted an illegal protective sweep of apartment 9G likewise fails.

### Lawfulness of Williams' Consent

Finally, Demery argues that the third illegal search occurred after police used the information they obtained during the sweep—namely the overwhelming odor of marijuana—to improperly coerce Williams into consenting to a search of the apartment. Demery's Brief at 23-25. Demery asserts that under these circumstances, Williams' consent to search was not voluntary. *Id.*

As stated above, a warrantless search of a premises is "presumptively unreasonable and constitutionally impermissible." *Commonwealth v.*

*Lehnerd*, 273 A.3d 586, 589 (Pa. Super. 2022). Voluntary consent, however, is an exception to the warrant requirement. *Id.* at 590. "To be considered valid, the consent must be the product of an essentially free and unrestrained choice—not the result of duress or coercion, express or implied, or a will overbo[]rne—under the totality of the circumstances." *Commonwealth v. Carmenates*, 266 A.3d 1117, 1124 (Pa. Super. 2021) (en banc) (quotation marks and citations omitted). The following factors are relevant to a determination of whether consent to search is voluntarily given:

> 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) whether the person has been told that he is free to leave; and 9) whether the citizen has been informed that he is not required to consent to the search.

*Commonwealth v. Hawkins*, 257 A.3d 1, 10 (Pa. Super. 2020) (quotation marks and citation omitted). Importantly, "[w]hile knowledge of the right to refuse to consent to the search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Id.* at 9 (quotation marks and citation omitted).

In this case, the entire basis of Demery's claim that Williams' consent to search apartment 9G was not voluntary was that, upon her arrival at the scene, police immediately confronted her with the information that they had

- 13 -

arrested Demery, they had detected the odor of marijuana in the apartment, and they were obtaining a search warrant. Demery's Brief at 23-26. Demery fails to articulate any argument regarding the factors set forth in **Hawkins** or, more generally, as to how the police coerced Williams into consenting to the search. At most, Demery asserts that police were able to obtain Williams' consent with the information he argues they illegally obtained during the protective sweep. **Id.** We have already concluded, however, that the protective sweep of the apartment was lawful. Moreover, the record reflects that police advised Williams of her rights regarding a search of the apartment prior to her giving consent. N.T., 11/15/2021, at 10-11; **see also Hawkins**, 257 A.3d at 9. As Demery has failed to set forth any other argument in support of his contention that Williams did not voluntarily consent to the search of the apartment, his final argument fails.

We find no merit to any of the claims Demery raises on appeal. We therefore conclude that the trial court did not err in denying his suppression motion.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/06/2024

- 14 -