J-S30007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LOUIS RICHARD GRIMES, JR. | : | |
| | : | |
| Appellant | : | No. 1755 MDA 2023 |

Appeal from the Judgment of Sentence Entered August 6, 2020
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0001166-2019

BEFORE:   PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:              **FILED: OCTOBER 29, 2024**

Louis Richard Grimes, Jr. appeals from the judgment of sentence entered in the Court of Common Pleas of York County for his convictions of persons not to possess firearms, discharge of firearm into an occupied structure, three counts of recklessly endangering another person, and criminal mischief.[1] Grimes challenges the trial court's ruling denying suppression of items found within a safe. After careful review, we affirm.

A prior *en banc* panel set forth the relevant factual and procedural history:

> On January 12, 2019, Officer Benjamin Smith of the York City Police Department received a 911 call from Sapia DeShields reporting that Grimes, her live-

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 2707.1(a), 2705, and 3304(a)(5), respectively.

in boyfriend, threatened her children and fired shots into her home while he was heavily intoxicated. She provided a nearby address where Grimes might be located — the home of Camille Sipe, Grime's ex-girlfriend and mother of two of his children. Officers proceeded to that location, where they observed Grimes exiting the residence. He was then taken into custody. After obtaining consent to search the home from the 25-year-old son of Ms. Sipe, *i.e.*, Denzell Sipe, officers searched the home and found discarded pants matching a description given to police by Ms. DeShields and a shell casing. During the search, Ms. Sipe arrived home, and officers asked her for her assistance in opening a locked safe located in her bedroom closet. Ms. Sipe told Officer Smith that she forgot the exact numbers, but she knew the combination was a ZIP Code in the Bronx. This information enabled the officers to open the safe, in which they found a 9mm pistol.

Trial Court [Rule] 1925(a) Opinion, 11/17/20, at 1-2.

The police charged Grimes with the crimes mentioned above, and he moved to suppress the evidence seized during the search of the home and safe. Ms. Sipe testified for the defense, and then Officer Smith testified for the Commonwealth.

At the conclusion of the hearing, both parties argued their positions to the suppression court, and it ruled from the bench that Grimes's motion was denied in all respects. Thus, there is no opinion from the suppression court setting forth its findings of fact and conclusions of law. [Notably, the trial judge who authored the Rule 1925(a) opinion did not preside over the suppression hearing.] Even so, we ascertain the suppression court's legal analysis for denying suppression from the discussion that the court had with the attorneys during the oral argument at the close of the hearing.

\* \* \*

[Based upon that discussion,] the suppression court impliedly concluded that the scope of Denzell's consent extended to Grimes's safe. As a result, the court never reached the next

> step of the defense's constitutional argument — *i.e.*, that the police coerced Ms. Sipe into consenting to the search of the safe by failing to disclose that they did not have a warrant.

*Commonwealth v. Grimes*, 1194 MDA 2020, at *1-2 (Pa. Super. filed March 7, 2022) (*en banc*) (unpublished memorandum) (original brackets, footnotes, and some record citations omitted).

Grimes proceeded to a jury trial, and he was convicted of the crimes noted above. The trial court sentenced Grimes to 7.5-15 years' incarceration. Grimes filed a timely appeal. A divided panel of this Court partially affirmed and partially reversed the order denying suppression; the Commonwealth sought reargument *en banc*. That request was granted and the *en banc* panel affirmed Grimes's judgment of sentence. Within that decision, this Court found that Grimes waived his challenge to the scope of Denzell's consent to search, specifically, whether Denzell's consent to search extended to the locked safe located in Ms. Sipe's closet. *See Grimes*, 1194 MDA 2020, at *5 ("The decision that Denzell properly authorized the police to search the safe is now a final, non-appealed adjudication. As such, whether Ms. Sipe *also* voluntarily consented to a search of that safe is moot.") (emphasis in original).

Grimes sought post-conviction relief, and the PCRA court found appellate counsel ineffective for waiving the challenge to the scope of Denzell's consent. The PCRA court reinstated Grimes's appellate rights and Grimes filed a timely notice of appeal.

Grimes raises three issues:

Whether the [suppression c]ourt [] committed a legal error when it violated Pa.R.Crim.P. 581(I) by failing to publish an opinion setting forth its findings of fact and conclusions of law on why [Grimes's] suppression motion was denied?

Whether the [suppression c]ourt [] erred when it found that Denzell Sipe's consent to the search of the home extended to the search of [Grimes's] safe within Ms. Sipe's closet?

Whether the [suppression c]ourt [] erred when it found that Ms. Sipe voluntarily consented to the search of [Grimes's] safe?

Appellant's Brief, at 4 (numbering and suggested answers omitted).

All of Grimes's complaints focus on the denial of his motion to suppress evidence, we therefore note our review:

is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review of questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of a suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of the suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. Lear***, 290 A.3d 709, 715 (Pa. Super. 2023) (citations omitted).

Grimes first argues the suppression court erred in failing to set forth its findings of fact and conclusions of law pursuant to Rule 581(I) when it denied Grimes's suppression motion. ***See*** Appellant's Brief, at 26-28.

Criminal Rule 581(I) mandates that, at the conclusion of the suppression hearing, "the judge shall enter on the record a statement of findings of fact and conclusions of law." We recognize that, unfortunately, it is not uncommon for suppression judges to

fail to comply with this directive, and the lapse is then belatedly accounted for, if at all, either in the court's Pa.R.A.P. 1925 opinion filed after an appeal is taken by the aggrieved party (which could be months in the case of a Commonwealth appeal or years later in the case of a defense post-verdict appeal) or by the [**Commonwealth v.**] **Kichline**[, 361 A.2d 282, 290 (Pa. 1976)] standard of review — a standard which came into existence precisely because of such lapses. We stress, however, the essential purposes served by the Rule, and we disapprove of non-compliance with its unambiguous mandate. A specific and contemporaneous announcement of suppression findings of fact and conclusions of law serves at least two salutary purposes. First, it permits the losing party to make a more intelligent assessment of whether or not to burden the appellate justice system with an appeal of the suppression ruling, particularly in cases of contested evidence. A defensible credibility-based decision may dissuade an appeal, whereas a purely legal ruling may make clear that further review is appropriate. Second, it is often the case, (for example, where a waiver trial occurs) that the suppression judge is different from the trial judge yet, if there is a conviction, it will be the trial judge who will be responsible for preparation of the Rule 1925 opinion for appeal. Thus, in cases where suppression is denied, a trial occurs, and a conviction ensues, and the defendant seeks to challenge the suppression ruling, the timely and specific ruling the suppression judge is required to enter under Rule 581(I) is essential to ensuring that the trial judge and the appellate courts will have a record upon which they can timely and meaningfully discharge their responsibilities.

**Commonwealth v. Millner**, 888 A.2d 680, 688-89 (Pa. 2005) (footnote omitted). Although we agree the suppression court erred in this regard, and we do not condone the suppression court's failure, we must address the Commonwealth's contention Grimes waived this claim by failing to object or raise it below. **See** Appellee's Brief, at 15-17.

It is axiomatic that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). At no time did Grimes object to the suppression court's failure to issue findings of fact

- 5 -

and conclusions of law pursuant to Rule 581(I). We therefore find this claim waived.

Even if we were not to find the claim waived, Grimes would not be entitled to the relief he seeks. Grimes asserts he is entitled to a new suppression hearing due to this error. We disagree that is the appropriate remedy. Where "a remand would not serve the interests of judicial economy or justice" we apply the **Kichline** standard:

> When the suppression court's specific factual findings are unannounced, or there is a gap in the findings, the appellate court should consider only the evidence of the prevailing suppression party (here, [the Commonwealth]) and the evidence of the other party (here, [Grimes]) that, when read in the context of the entire record, remains uncontradicted.

**Millner**, 888 A.2d at 685 (citation omitted). Remand in this instance would not serve the interests of judicial economy as the suppression hearing was held approximately five years ago — on October 3, 2019. Furthermore, this Court has previously found sufficient facts from the record of the suppression hearing and determined the suppression court's legal conclusions from the discussion between the court and parties at the end of the hearing. **See Grimes**, 1194 MDA 2020, at *1-2. We therefore find Grimes's first issue waived but will follow the **Kichline** standard of review for Grimes's remaining claims.

Grimes next asserts that the suppression court erred in finding Denzell's consent to search the home included Grimes's safe located in Ms. Sipe's closet.

- 6 -

"Under the Fourth Amendment, searches and seizures without a warrant are presumptively unreasonable, subject only to specifically established exceptions." **Commonwealth v. Hawkins**, 257 A.3d 1, 9 (Pa. Super. 2020) (citations omitted). One of the established exceptions is consent to search. **See id.** Denzell consented to the search of the house, and this Court previously found his consent sufficient for the police to search the house "in conformity with the Fourth Amendment." **Grimes**, 1194 MDA 2020, at *4. This Court did not address, however, whether Denzell's consent included the search of the safe located in Ms. Sipe's closet. **See id.** at *5. We now address Grimes's contention that Denzell could not consent to a search of the safe.

Grimes argues that Denzell did not have actual or apparent authority to consent to the search of the safe because "there was no testimony that [Denzell] knew the combination to the safe; [] ever had access to use the safe; or that he even knew the safe was in Ms. Sipe's closet prior to the police discovering it during the initial search." Appellant's Brief, at 30.

> It is well-settled that a homeowner who lacks access to, or control over, a guest's private closed containers also lacks the authority to consent to a search of them.
>
>> A privacy interest in a home itself need not be coextensive with a privacy interest in the contents or movements of everything situated inside the home. This has been recognized before in connection with third-party consent to searches. A homeowner's consent to a search of the home may not be effective consent to a search of a closed object inside the home. Consent to search a container or a place is effective only when given by one with "common authority over or other sufficient relationship to the premises or

- 7 -

> effects sought to be inspected." "Common authority rests on mutual use of the property by persons generally having joint access or control for most purposes."

*Commonwealth v. Perel*, 107 A.3d 185, 191 (Pa. Super. 2014) (citations, and ellipses omitted).

Instantly, Denzell was not the homeowner, but the same standard applies. There was no evidence presented to show Denzell had joint access or control over the safe. However, that does not end our analysis, as this Court previously found Denzell had apparent authority to consent to the search of the home. *See Grimes*, 1194 MDA 2020, at *4.

> A third party with apparent authority over the area to be searched may provide police with consent to search. Third party consent is valid when police reasonably believe a third party has authority to consent. Specifically, the apparent authority exception turns on whether the facts available to police at the moment would lead a person of reasonable caution to believe the consenting third party had authority over the premises. If the person asserting authority to consent did not have such authority, that mistake is constitutionally excusable if police reasonably believed the consenter had such authority and police acted on facts leading sensibly to their conclusions of probability.

*Commonwealth v. Rosario*, 248 A.3d 599, 609 (Pa. Super. 2021) (citation omitted).

This Court found Denzell had apparent authority to consent to the search of the house:

> Denzell presented the police with the appearance that he had authority to consent to the search. Denzell was 25 years old at the time and resided there fulltime. Furthermore, he had access to every room, and he answered the front door both times that the officers knocked. Denzell led them through the premises when

- 8 -

they asked to sweep the home for other occupants, which manifested a strong appearance of authority over the home.

***Grimes***, 1194 MDA 2020, at *4.

Denzell's apparent authority does not extend to the safe, however, as there was no evidence offered to show Denzell knew about the safe. The safe was located in Ms. Sipe's bedroom closet. It is unreasonable for police to believe Denzell could consent to a search of a safe in his mother's bedroom closet without more information as to whether he knew the safe was there, had access to the safe, and knew the combination to the safe. We therefore find Grimes's second claim has merit.[2]

That does not end our analysis, however. As Grimes notes, Ms. Sipe consented to the search by providing the police the combination to the safe. ***See*** Appellant's Brief, at 31. We therefore turn to Grimes's third claim: "Whether the [suppression c]ourt [] erred when it found that Ms. Sipe voluntarily consented to the search of [Grimes's] safe?" Appellant's Brief, at 4. Because we "may affirm on any legal basis supported by the certified record[]" we address this claim even though the suppression court did not address whether Ms. Sipe consented to the search and if that consent was voluntary. ***Commonwealth v. Ani***, 293 A.3d 704, 729 (Pa. Super. 2023) (citations omitted).

---

[2] We note the Commonwealth does not dispute this finding— "for purposes of this record, it is undetermined whether Denzell Sipe might have had the authority to consent to the search of the safe." Appellee's Brief, at 27 n.4.

Grimes first argues the search of the safe, even with Ms. Sipe's consent, is fruit of the poisonous tree. *See id.* at 31-34. We disagree. "The fruit of the poisonous tree doctrine prohibits the admission of evidence at trial that was tainted by unconstitutional actions by law enforcement officials." *Commonwealth v. Santiago*, 209 A.3d 912, 914 (Pa. 2019) (quotation marks omitted). The testimony clearly established that police did not search the safe until after Ms. Sipe returned home and provided the combination. *See* N.T. Suppression Hearing, 10/3/19, at 15, 32. As we previously held Denzell's consent to search the house was constitutionally permissible, the police finding the safe cannot be fruit of the poisonous tree as the police actions up to that point were constitutionally permissible.

Grimes continues his argument by claiming the search of the safe was based upon Ms. Sipe's unknowing and involuntary consent. *See* Appellant's Brief, at 35. Grimes asserts Ms. Sipe's consent was unknowing and involuntary because police obtained it "through exploitation of Ms. Sipe's false impression that the police had a warrant." *Id.* We find this claim specious.

Whether consent is voluntarily given is determined by the totality of the circumstances.

> In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person

- 10 -

who gave consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the [individual]. Gauging the scope of a[n individual's] consent is inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

Other factors relevant to a determination of the validity of a consent to search include:

1) The presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including the degree of coerciveness; 8) whether the person has been told that he is free to leave; and 9) whether the citizen has been informed that he is not required to consent to the search.

**Commonwealth v. Benitez**, 218 A.3d 460, 479-80 (Pa. Super. 2019) (citations and ellipsis omitted).

It is true that "consent to search a residence is invalid where it is given in response to police misrepresentation concerning the existence of a valid search warrant." **Commonwealth v. Gillespie**, 821 A.2d 1221, 1226 (Pa. 2003) (citation omitted). However, where police "merely state[] they would get a warrant" it does not invalidate consent. **Id.**

The totality of the circumstances here indicate Ms. Sipe gave voluntary consent to search the safe. There is no evidence of police excess; no physical contact between police and Ms. Sipe; police did not direct Ms. Sipe's movements; Ms. Sipe testified there was no confrontation with police; there

was no investigative detention as Ms. Sipe was not the suspect; and while Ms. Sipe was not informed she was not required to consent, she knew this. ***See*** N.T. Suppression Hearing, 10/3/19, 12, 15, 32.

Significantly, at no time did any officer tell Ms. Sipe they did, in fact, obtain a search warrant. ***See id.*** at 22, 33. Officer Smith testified he spoke with Ms. Sipe about the process for obtaining a search warrant if necessary before he obtained consent to search from Denzell. ***See id.*** at 29. Ms. Sipe's false impression that police had a warrant was not based upon police misrepresentation. Neither did police exploit her false impression, as the police were unaware Ms. Sipe believed they had a search warrant until she requested to see it **after** she gave police the combination to the safe. ***See id.*** at 15, 32. Based upon the totality of the circumstances, Ms. Sipe voluntarily consented to the search of the safe by providing the combination to police.

Taking the Commonwealth's evidence and Grimes's evidence that is uncontradicted in context of the entire suppression record, we conclude Ms. Sipe voluntarily consented to the search of the safe after her son, Denzell, consented to the search of the house. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>10/29/2024</u>